*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

      *v.*

TROY A. MASTER,

          *Defendant-Appellant.*

No. 08-6418

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 07-00004-001—Harry S. Mattice, Jr., District Judge.

Argued: August 6, 2010

Decided and Filed: August 31, 2010

Before: COLE and CLAY, Circuit Judges; KATZ, District Judge.<sup>*</sup>

_____

**COUNSEL**

**ARGUED:** Bryan H. Hoss, DAVIS & HOSS, P.C., Chattanooga, Tennessee, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Bryan H. Hoss, DAVIS & HOSS, P.C., Chattanooga, Tennessee, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. Defendant Troy Master appeals the denial of his motion to suppress evidence found at his home during the execution of a search warrant. Defendant entered a conditional guilty plea to being a felon in possession of a firearm

---

<sup>*</sup>The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

in violation of 18 U.S.C. § 922(g)(1) that preserved his right to appeal the denial of his motion to suppress. For the following reasons, the case is **REMANDED** to the district court for further proceedings consistent with this opinion.

## STATEMENT OF FACTS

On January 14, 2007, Investigator George Dyer of the Franklin County, Tennessee Sheriff's Department submitted an affidavit in support of a search warrant for Defendant's residence. On the affidavit, Defendant's residence was listed as "9356 AEDC Road, Winchester Franklin County, Tennessee." The affidavit included directions to a single wide trailer where Defendant lived. Defendant's residence, however, is actually in Coffee County, not Franklin County.[1]

The search warrant was signed by Judge Thomas C. Faris on January 14, 2007. Judge Faris is a general sessions and juvenile court judge in Franklin County, Tennessee. As a general sessions judge in Franklin County, state law provided Judge Faris with the authority to sign warrants only for property in Franklin County itself. Less than three months before the search, on October 16, 2006, officers from the Franklin County Sheriff's Department had responded to a disturbance call at Defendant's residence. Defendant was arrested for domestic violence. The charge was dismissed by Judge Faris less than a month before the search warrant in this case was issued because the proper venue was Coffee County, not Franklin County.

On January 15, 2007, Franklin County Sheriff's officers executed the search warrant in this case. During the search, Defendant informed the officers that he had a shotgun in the bedroom. On that basis, officers arrested Defendant, a former felon.

At the suppression hearing, Investigator Dyer testified that he believed Defendant lived in Franklin County because Dyer's supervisor informed him that Defendant had registered as a sex offender in Franklin County using his current street address. Dyer

---

[1]In the district court, the government appeared to contest the location of Defendant's residence, but the government made no argument in briefing to this Court that Defendant did not live in Coffee County.

also claimed he had spoken with a 9-1-1 operator at the Franklin County Sheriff's Department who informed him that she would dispatch a Franklin County Sheriff's Department vehicle if a call came from that address. Defendant presented testimony from an investigator hired by the Public Defender's Office, Bill Dipillo. Dipillo testified that the Property Assessor for Franklin County plus the 911 dispatchers for Franklin and Coffee County all stated Defendant's residence was in Coffee County. Dipillo also testified about the previous dismissal of the domestic violence charges by Judge Faris when the charges had been brought incorrectly in Franklin County instead of Coffee County.

The motion to suppress was denied on June 4, 2008. Defendant entered a conditional guilty plea on August 11, 2008. On November 10, 2008, Defendant was sentenced to 57 months' imprisonment. This timely appeal followed.

## DISCUSSION

"This court reviews a district court's decision on a motion to suppress under two standards. 'Findings of fact are upheld unless clearly erroneous, while conclusions of law are reviewed *de novo*.'" *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (quoting *United States v. Leake*, 95 F.3d 409, 416 (6th Cir. 1996)). "This court views the evidence in the light most likely to support the district court's decision." *United States v. McPhearson*, 469 F.3d 518, 523 (6th Cir. 2006) (citation and quotation omitted). "A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008) (citation and quotation omitted).

## A.    Whether the Search Violated Defendant's Fourth Amendment Rights

Defendant's sole challenge to the motion to suppress is that because the Tennessee general sessions judge who signed the search warrant application presided in a different county from Defendant's residence, the judge had no authority under Tennessee law to authorize the warrant. It is uncontested by the government that the

authorizing judge, Judge Faris, did not have jurisdiction under Tennessee law to authorize a warrant for property in a different county. The question becomes whether this lack of authority is relevant in a prosecution occurring in federal court. For the following reasons, we determine that it is.**2**

The government relies on a series of cases that hold that additional protections a state provides its citizens against search and seizure are irrelevant in federal prosecutions. *See, e.g., Virginia v. Moore*, 553 U.S. 164 (2008); *United States v. Wright*, 16 F.3d 1429 (6th Cir. 1994); *United States v. Allen*, 954 F.2d 1160 (6th Cir. 1992). In *Moore*, the Supreme Court reversed a Virginia Supreme Court decision suppressing evidence on Fourth Amendment grounds because the officers had failed to fully comply with Virginia law that provided additional protections for suspects. The Supreme Court determined that the failure was irrelevant where the arrest was based on probable cause and that the Fourth Amendment therefore allowed an arrest in that setting. The Court held that "while States are free to regulate [arrests] however they desire, state restrictions do not alter the Fourth Amendment's protections." *Moore*, 553 U.S. at 176. Likewise, in *Wright*, the defendant had been arrested and challenged the resulting search on the basis of state law. This Court rejected his challenge, finding that a "state may impose a rule for searches and seizures that is more restrictive than the Fourth Amendment . . . . However, the state rule does not have to be applied in federal court." *Wright*, 16 F.3d at 1434. It is therefore apparent that had Defendant challenged the probable cause determination as violating state law, that challenge would be precluded. As this Court noted in *Wright*: "in federal court, [the exclusionary rule] only requires the court to exclude evidence seized in violation of the Federal Constitution." 16 F.3d at 1434.

---

**2**This Court has previously considered this question and issued a divided unpublished opinion finding the search did not violate the Fourth Amendment. *United States v. Franklin*, 284 F. App'x 266 (6th Cir. 2008). This case and *Franklin* appear to be distinguishable. To the extent the two cases have factual distinctions, the facts in this case are more favorable to Defendant. In *Franklin*, it was at least debatable whether the local judge had authority under state law to issue the contested warrant because the judge who lacked jurisdiction asserted that he had authority pursuant to Tennessee's "interchange" rules. *See Franklin*, 284 F. App'x at 268. Additionally, since *Franklin* is unpublished, the panel is not required to follow the case. *See Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002) (noting that it is "well-established law in this circuit that unpublished cases are not binding precedent"). This panel therefore makes an independent determination of whether the search violated the Fourth Amendment.

The problem for the government in this case, however, is that the warrant is not invalid because of an additional protection provided by the state.  Instead, the warrant is invalid because it does not comply with the Fourth Amendment.  The jurisdictional limits placed on Judge Faris are not additional protections for a citizen but instead merely a reflection of the authority vested by the state in a general sessions judge.   As we recognized in *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001), "when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio*."  Here, it is undisputed that Judge Faris did not have the authority under Tennessee law to authorize the warrant for a search of Defendant's property in Coffee County.

The government factually distinguishes *Scott*, but those distinctions do not compel a different outcome.  In *Scott*, this Court granted a motion to suppress when the search warrant was signed by a retired judge.  The judge occasionally substituted for active judges but was not working in that capacity when he signed the warrant. Therefore, when the judge in *Scott* approved the warrant, he had no authority to approve any warrants, while Judge Faris undoubtedly had authority to issue warrants for Franklin County.

However, the difference between the judge in *Scott* and Judge Faris are immaterial in determining the validity of a warrant.  The Supreme Court laid out the requirements for the qualifications of a magistrate in *Shadwick v. City of Tampa*, 407 U.S. 345 (1972).  In *Shadwick*, the Supreme Court considered whether county clerks authorized by Florida law to issue warrants had authority under the Fourth Amendment. The Court rejected an argument that the issuing magistrate must be a judge or lawyer and required only that a magistrate be "neutral and detached."  *Id.* at 350.  The opinion is highly solicitous of state and local authority.  The Court acknowledged that a judge or lawyer would "normally provide the most desirable review of warrant requests."  *Id*. at 353.  The Court declined to impose such a rule in part because our federal system "recognizes in plural and diverse state activities one key to national innovation and vitality.  States are entitled to some flexibility and leeway in their designation of

magistrates." *Id*. at 354.  The qualifications of a magistrate are therefore inextricably intertwined with state law.  State law determines what person is allowed to approve what warrant.  If a state has the flexibility to determine who has the authority to issue warrants, it should be allowed to delineate the scope of that authority.  The *Shadwick* opinion's explicit acknowledgment of the importance of state actors is contrary to a position that a state does not have the authority to place jurisdictional limits on its magistrates.  Tennessee's own policy determinations on how to administer its justice system are undermined when the limits it places on general sessions judges cease to exist if the prosecution turns the fruits of its improper search over to federal prosecutors.

Applying the rationale of *Shadwick*, the authorizing judge in this case is indistinguishable from that in *Scott*.  While no allegation in the record suggests that Judge Faris was not neutral and detached, the same is true of the retired judge in *Scott*.  Arguably, thousands of citizens in Tennessee satisfy the explicit requirement of *Shadwick* that the magistrate be "neutral and detached, and . . . be capable of determining whether probable cause exists for the requested arrest or search." *Id*. at 350.  Clearly, more is required under the Fourth Amendment for an individual to be qualified and thus authorized to serve as a magistrate, and the requisite qualifications are determined by state law.  In *Scott*, the retired judge was only eligible to issue warrants when he was officially substituting for the active general sessions judge.  The retired judge would serve as a "special judge" pursuant to T.C.A. § 16-15-209.  Under that statute, however, he could only serve when the active general sessions judge was unavailable.  When the relevant warrant was authorized, the active general sessions judge was available, so under Tennessee law, the retired judge had no authority to issue the warrant.

In this case, Tennessee law determines that Judge Faris only has authority to issue warrants in Franklin County.  Judge Faris' authority to issue warrants is codified at Tenn. Code Ann. § 40-5-102.  State law, however, also provides that "[a] magistrate with jurisdiction in the county where the property sought is located may issue a search warrant authorized by this rule." Tenn. R. Crim. P. 41(a).  Judge Faris, as a Franklin County judge, simply did not have the authority to issue a warrant to search a property

in Coffee County. We do not think the differences between the retired judge in *Scott* and Judge Faris are material. Tennessee law determined that the retired judge was not properly serving as a special judge, and thus had no authority to issue a warrant. Tennessee law determines that Judge Faris has no authority to issue a warrant for Coffee County.

A state is allowed to determine when a person is authorized to approve warrants, where that person has the authority to approve warrants, and what type of warrants that person is allowed to approve. To hold otherwise would allow federal courts to completely undermine state determinations of who is an authorized magistrate, and it is beyond question that we determine who is a qualified magistrate by consulting state law. *See United States v. Bennett*, 170 F.3d 632, 635-36 (6th Cir. 1999) (determining that a warrant was valid when "the issuance of the search warrant conformed to Kentucky's procedural requirements" that vested authority in the challenged magistrate); *United States v. Conine*, 33 F.3d 467, 469 (5th Cir. 1994) (noting that "when a state officer secures a search warrant from a state judge, Federal Rule of Criminal Procedure 41(a) is not the rubric for determining whether the search warrant was issued by an appropriate court even when the seized evidence is offered in federal court. State law controls in that instance."); *United States v. Neering*, 194 F. Supp. 2d 620, 625-27 (E.D. Mich. 2002) (suppressing evidence following a determination that state magistrate did not have authority to authorize warrant under state law). In this case, Judge Faris' authority to issue warrants stems exclusively from Tennessee law, but that same source of law provides that Judge Faris had no authority to issue a warrant for a search of Defendant's home. The search therefore violated Defendant's Fourth Amendment rights.

**B.      Whether the Exclusionary Rule Should Be Applied**

While the search of Defendant's property based on an invalid warrant violated Defendant's Fourth Amendment rights, the government argues that even if the warrant was invalid, the search should be upheld pursuant to the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984). Defendant argues that the good faith exception is foreclosed by our decision in *Scott*. In *Scott*, this Court specifically found that "when

a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio*." *Scott*, 260 F.3d at 515. The Court specifically rejected the applicability of *Leon* in that case because *Leon* itself "left 'untouched the probable-cause standard and the various requirements for a valid warrant.' At the core of these various requirements is that the warrant be issued by a neutral and detached judicial officer." *Scott*, 260 F.3d at 516 (quoting *Leon*, 468 U.S. at 923). Therefore, based on *Scott*, it could be argued that because Judge Faris lacked legal authority to issue the relevant warrant, the good faith exception is foreclosed.

We do not believe, however, that such a broad interpretation of *Scott* continues to be viable in light of more recent Supreme Court cases. *See, e.g., Herring v. United States*, 129 S. Ct. 695 (2009); *Hudson v. Michigan*, 547 U.S. 586 (2006). The decision in *Scott* is based on a reading of *Leon* that separates the requirements of the warrant itself and the requirements of the magistrate who issues the warrant. In *Scott*, the Court reasoned that where, as here, the magistrate lacks authority to issue the contested warrant, the supposed "good faith" of the officer who executes the warrant can do nothing to confer legal status upon the deficient warrant. This reasoning, while certainly a permissive reading of *Leon*, is no longer clearly consistent with current Supreme Court doctrine, as the Court has made clear in *Herring*:

> The fact that a Fourth Amendment violation occurred – *i.e.*, that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies. Indeed, exclusion has always been our last resort, not our first impulse, and our precedents establish important principles that constrain application of the exclusionary rule.
>
> First, the exclusionary rule is not an individual right and applies only where it results in appreciable deterrence. We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future.
>
> In addition, the benefits of deterrence must outweigh the costs. We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence. To the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighted against its

> substantial social costs. The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free – something that offends basic concepts of the criminal justice system. The rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application.

*Herring*, 129 S.Ct. at 700-01 (citations and quotations omitted).

This language is contrary to a foundational assumption of the opinion in *Scott* that: "Subject to a few exceptions, the exclusionary rule requires the suppression of evidence obtained in violation of the Fourth Amendment." *Scott*, 260 F.3d at 514. Whereas *Scott* effectively required the government to qualify for an exception to the general rule of suppression, the Supreme Court has since emphasized that the decision to exclude evidence is divorced from whether a Fourth Amendment violation occurred. *See Herring*, 129 S.Ct. at 700. The exclusionary rule's purpose is instead "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 129 S.Ct. at 702. Furthermore, the Court noted that the "exclusionary rule was crafted to curb police rather than judicial misconduct." *Id*. at 701. Arguably, the issuing magistrate's lack of authority has no impact on police misconduct, if the officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate.[3]

The holding of *Herring* and other recent Supreme Court cases does not directly overrule our previous decision in *Scott*. Nonetheless, we believe that the Supreme Court's evolving suppression rulings in Fourth Amendment cases require clarification or modification of our precedent in *Scott*. *See United States v. Clinton*, 338 F.3d 483, 489 (6th Cir. 2003) (acknowledging that published opinions are binding on a panel unless "an inconsistent decision of the United States Supreme Court requires modification of the decision" (citation and quotation omitted)).

---

[3]While recent Supreme Court case law may foreclose the broadest possible interpretation of *Scott* advocated by Defendant, nothing in this opinion should cast doubt on the ultimate outcome in *Scott*. In that case, the officers made at best minimal attempts to find available, active magistrates before presenting the warrant to the retired judge.

The Supreme Court has effectively created a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, "the benefits of deterrence must outweigh the costs." *Herring*, 129 S.Ct. at 700. In following the Supreme Court's approach with respect to the instant case, the costs of excluding the evidence would appear to outweigh any deterrent effect. This is so, in no small measure, because the *Herring* Court's emphasis seems weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in "deliberate, reckless, or grossly negligent conduct." *Id.* at 702.

In this case, if Dyer, the government's primary witness, is to be believed, then suppression would not appear to be the appropriate remedy. According to Dyer, he sought a warrant in Franklin County in part because Defendant, himself, stated on his sex offender registration that his residence was in Franklin County. Nothing in the record indicates why the local police had any improper motivation to seek out Judge Faris as opposed to the general sessions judge for Coffee County.

While it appears at first blush that suppression might be inappropriate in this case, we will remand the case to the district court for the purposes of re-examining the facts and balancing the interests as required by *Herring*. When this matter was previously before the district court, the court never made any factual findings related to the conduct of the officers, finding instead that the warrant did not violate Defendant's Fourth Amendment rights. As stated above, we overrule that determination. On remand, the district court "must consider the actions of all the police officers involved," not merely Dyer. *Herring*, 129 S.Ct. at 699. Furthermore, the jurisdictional limits placed on a state court judge should be respected. Intentional attempts to avoid adhering to jurisdictional limitations imposed by state law is conduct that can and should be considered and deterred by the judiciary. However, as in all suppression cases, all of the relevant facts and circumstances should be weighed in the balance; and the crucial finding needed to suppress evidence is whether "police [mis]conduct [is] sufficiently

deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. at 702.

## CONCLUSION

For the foregoing reasons, the case is **REMANDED** to the district court for proceedings consistent with this opinion.