**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0994n.06

**No. 11-3694**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Sep 07, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff - Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| MICKEY FUGATE, | ) | **OPINION** |
| | ) | |
| Defendant - Appellee. | ) | |

_____

**Before:  SILER and WHITE, Circuit Judges; REEVES, District Judge.**[*]

**PER CURIAM**.   The government appeals the district court's order granting Defendant-Appellee Mickey Fugate's motion to suppress evidence under the Fourth Amendment.  We **AFFIRM** in part and **REMAND** in part.

**I.**

On November 14, 2009, at approximately 3:40 p.m., a lone gunman wearing a dark hoodie and green ski-mask entered the Kwik-N-Kold convenience store on Wyoming Avenue in Dayton, Ohio, robbed it at gunpoint, and shot and wounded a clerk.  Observing a masked man with a gun and money in his hands leave the store, two citizens called the police and followed the man for several miles.  The citizens informed the police dispatcher that the man was driving a black Cadillac without license plates and appeared to be circling

_____

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

an area of about a half-mile radius. The police dispatcher, in turn, relayed information about the robbery and chase to officers on patrol. The citizens lost the vehicle when they were forced to abandon the chase because the person in the Cadillac shot at them.

Officer Michael Saylors responded to the call and began searching the vicinity for the Cadillac. Saylors testified that, based on his experience, the gunman may have been circling to try to get to a nearby house. About ten or fifteen minutes after the car was lost, as Saylors was driving up an alleyway just outside the area the gunman had been circling, he spotted the top of a black vehicle in the backyard of the residence located at 140 Drummer Avenue. The vehicle was parked between the house and an above-ground pool, so that only the top twelve to eighteen inches of the car was visible from the alleyway. Officer Jon Zimmerman, another officer who arrived at the scene, testified that he did not see the vehicle at first and could "barely see a little bit of the top of the car."

Knowing that the backyard was private property, and without a search warrant, Saylors entered the backyard – without having to open a fence or gate to gain entry – and discovered that the vehicle was a black Cadillac without a license plate. Upon further inspection, he found money inside the car and a cash-register drawer on the ground near the car. Saylors called for back-up, which arrived within seconds. Saylors went to the front of the house and asked a group of people nearby if they had seen any activity at 140 Drummer; they had not. The officers also knocked on two doors to the house, announced themselves

2

as police, and confirmed that the doors were locked. After walking around the house, Saylors noticed that a back window was open.[1]

Saylors and Zimmerman testified they believed there might be hostages inside the house, so Zimmerman and another officer, Officer Lynott, entered the house through the open window. Once inside, the officers encountered Defendant Fugate and instructed him to walk backwards towards them with his hands in the air. The officers handcuffed Fugate and assisted him out through the open window. They then conducted a protective sweep of the house and noticed a dark blue hooded sweatshirt on top of the washer and dryer and an access to the attic that was slightly ajar. Just inside the attic, the officers saw a green piece of fabric. They secured the house until they could obtain a search warrant.

Based upon the information the officers discovered, including Saylors's discovery of the black Cadillac, money, and hooded sweatshirt, Detective Sean Copley obtained a search warrant for the residence at 140 Drummer. During the execution of the warrant, the officers discovered further incriminating evidence, including a 9-millimeter handgun and money located in a pillowcase and in-between mattresses. Saylors did not participate in executing the search warrant.

Fugate was charged with one count of interfering with commerce by the threat or actual use of physical violation, 18 U.S.C. §1951(a); one count of using a firearm in relation to a crime of violence, 18 U.S.C. §924(c)(1))(A)(iii); and one count of felon-in-possession

---

[1] Additionally, a K9 arrived and tracked the money from the Cadillac to the front of the house. Nothing in the record indicates that the dog alerted on the open window.

of a firearm, 18 U.S.C. §§922(g)(1) & 924(a)(2). He moved to suppress all evidence against him, arguing that Saylors's initial entry into the backyard of 140 Drummer violated the Fourth Amendment and, therefore, the search warrant obtained on the basis of information acquired from the search was invalid. After an evidentiary hearing and post-hearing briefing, the district court granted Fugate's motion. The government timely appealed.

## II.

When considering a district court's decision on a motion to suppress, we review factual findings for clear error and legal conclusions de novo, taking the evidence "in the light most likely to support the district court's decision." *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994); *see also United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009).

## III.

We begin by considering whether the government has waived any arguments that Saylors's warrantless search of the backyard of 140 Drummer violated the Fourth Amendment. In the district court, the government advanced two arguments. First, the government argued that the plain-view exception to the warrant requirement justified Saylors's warrantless entry into the backyard and that his conduct, therefore, did not violate the Fourth Amendment. *See United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011). Second, the government argued that exigent circumstances and probable cause – based on Officer Saylors's discovery of the black Cadillac without a license plate and the cash register drawer – justified the warrantless entry of the *house* itself rather than the backyard. *See*

4

*United States v. Bass*, 315 F.3d 561, 564 (6th Cir. 2002). The government did not contend that the officers' conduct fell within the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897 (1984).

In this appeal, the government abandons its argument that the warrantless entry of the backyard falls within the plain-view exception. Instead, the government analogizes the facts here to a series of cases in which police officers employ an investigative technique known as a "knock and talk." *See, e.g., Hardesty v. Hamburg Twp*., 461 F.3d 646, 654 (6th Cir. 2006); *United States v. Thomas*, 430 F.3d 274, 276 (6th Cir. 2005); *Estate of Smith v. Marasco*, 430 F.3d 140, 157 (3d Cir. 2005); *Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 358 (4th Cir. 1998). Second, the government argues that Saylors's entry into the *backyard* falls within the exigent-circumstances exception to the warrant requirement.[2] Relatedly, the government contends the burden of justifying a warrantless search of a home's curtilage is lower than for the home itself and that the exigent-circumstances inquiry involves a balancing approach. The government also argues in favor of the good-faith exception in this appeal.

There are essentially two cases involved here: the one the government made to the district court and the one the government makes in this appeal. Given that the government

---

[2]The district court found, and the government does not dispute, that the backyard was part of the curtilage of 140 Drummer. *See generally United States v. Dunn*, 480 U.S. 294, 301 (1987) (explaining four-factor test for determining extent of home's curtilage); *Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385, 389-90 (6th Cir. 2008) (holding backyard of residence as part of the curtilage); *accord United States v. Wells*, 648 F.3d 671, 677 (8th Cir. 2011).

advanced two perfunctory (and erroneous) arguments below and entirely omitted necessary steps for a full analysis of the complicated Fourth-Amendment issues presented, we cannot fault the district court for the way it addressed the issues in this case. Although we can abandon the general rule that we do not consider arguments presented for the first time on appeal, this is not such an exceptional case. *United States v. Ellison*, 462 F.3d 557, 560-61 (6th Cir. 2006). Under these circumstances, we will not disturb the district court's analysis and conclusion that Saylors's entry into the backyard of 140 Drummer violated Fugate's Fourth Amendment rights.

**IV.**

We now turn to the question whether the good-faith exception to the exclusionary rule applies in this case. The government contends that even if Saylors's initial warrantless entry violated the Fourth Amendment, the exclusionary rule is nevertheless inapplicable on the facts of this case. Although the government did not raise the good-faith issue below, the district court *sua sponte* addressed it, finding that the *Leon* good-faith exception did not apply. Hence, the government can challenge the ruling on appeal. *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) ("[T]here can be no forfeiture where the district court [despite a party's failure to press an argument,] addressed the merits of the issue."). This court reviews de novo the district court's determination that the good-faith exception does not apply. *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (citation omitted).

6

The sole purpose of the exclusionary rule – a judicially created remedy that bars the government from introducing evidence obtained through illegal searches and seizures – is to deter future law enforcement officers from violating the Fourth Amendment. *Davis v. United States*, 564 U.S. — , 131 S. Ct. 2419, 2426 (2011).[3] But the exclusionary rule is not absolute. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence, . . . has always been our last resort, not our first impulse."). In *Leon*, the Supreme Court created the good-faith exception to the exclusionary rule, "which allows admission of evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Evers*, 669 F.3d 645, 654 (6th Cir. 2012) (citation omitted).

This case presents a situation in which a defendant seeks to suppress evidence obtained pursuant to a search warrant containing information discovered in a warrantless search that has been held to violate the Fourth Amendment. The question is whether the *Leon* good-faith exception applies when officers act pursuant to a search warrant that is based on an illegal predicate search. The answer to this question is far from clear, and we have issued inconsistent opinions on the issue. *Compare United States v. McClain*, 444 F.3d 556, 559 (6th Cir. 2006) *with United States v. Davis*, 430 F.3d 345, 358 n.4 (6th Cir. 2005). Likewise, the circuits are split.[4]

---

[3]We also note that the district court did not have the benefit of *Davis* because the Supreme Court issued it after the district court ruled on Fugate's motion to suppress.

[4]*See, e.g.*, *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989) ("We believe the Fourth Amendment was violated, but we also believe the facts of this case are close enough to the line of validity to make the officers' belief in the validity of the warrant

Relying primarily on a line of cases arising in the Eighth Circuit, the *McClain* panel

concluded that the good-faith exception applies, even if a warrant is based on an illegal

predicate search, where "the facts surrounding the initial warrantless search were close

enough to the line of validity to make the executing officers' belief in the validity of the

search warrants objectively reasonable." 444 F.3d at 566. We are bound by *McClain*.[5]

*United States v. Humphrey*, 287 F.3d 422, 452 (6th Cir. 2002) ("It is axiomatic that a court

of appeals must follow the precedent of prior panels within its own circuit.").

Since *McClain*, the Supreme Court elaborated on the scope of the exclusionary rule.

*Davis v. United States*, 564 U.S. , 131 S. Ct. 2419, 2426, 180 L. Ed. 2d 285 (2011);

*Herring v. United States*, 555 U.S. 135 (2009). In *Herring*, the Supreme Court reiterated that

"suppression is not an automatic consequence of a Fourth Amendment violation." U.S. at

137; *see also United States v. Master*, 614 F.3d 236, 242 (6th Cir. 2010) (discussing *Herring*

---

objectively reasonable."); *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("[T]he good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search."); *see also* Hadar Aviram, Jeremy Seymour, and Richard Leo, *Moving Targets: Placing the Good Faith Doctrine in the Context of Fragmented Policing*, 37 Fordham Urb. L.J. 709 (noting the circuit split and explaining that *United States v. Herring* does not squarely answer the question).

[5]We reach this conclusion because *McClain* represents our most recent published decision and contains an exhaustive discussion of the issue. In contrast, the *Davis* panel's conflicting conclusion is dicta in a footnote based in part on a Second Circuit case that expressly declined to answer the operative question. *See United States v. Reilly*, 76 F.3d 1271, 1280-81 (2d Cir. 1996) ("[W]e do not hold that the fruit of illegal searches can never be the basis for a search warrant that the police can subsequently use in good faith. We do not need to reach that question."). Finally, the defendant in *McClain* petitioned for rehearing en banc, which the court declined over a strong dissent. *United States v. McClain*, 444 F.3d 537 (6th Cir. 2006).

and noting "the decision to exclude evidence is divorced from whether a Fourth Amendment violation occurred"). In doing so, the Court discussed *Leon* extensively, concluding:

> When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant. We (perhaps confusingly) called this objectively reasonable reliance 'good faith.'"

*Herring*, 555 U.S. at 142. Thus, even assuming a Fourth Amendment violation:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Id*. at 144. *Herring* also makes clear that in analyzing the applicability of the good-faith exception, "we must consider the actions of all the police officers involved," *id.* at 140 (quoting *Leon*, 468 U.S. at 923 n.24), including, in this case, Saylors.

Here, the district court did not have the benefit of the parties' briefing and argument on this issue. Likewise, the Supreme Court issued *Davis* after the district court granted Fugate's motion to suppress. As we explained in *Master*, "the Supreme Court has effectively created a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, the benefits of deterrence must outweigh the costs." In *Master*, we remanded to allow the district court to consider whether the officers' conduct was deliberate, reckless, or grossly negligent. 614 F.3d at 243 (citation and alterations omitted). As in *Master*, the district court has not had this opportunity, and we therefore remand the case for further proceedings not inconsistent with this opinion.

**V.**

For these reasons, we **AFFIRM** the district court's decision in part and **REMAND**

in part.

**HELENE N. WHITE, Circuit Judge**, dissenting.  The district court addressed the good-faith exception—which had not been asserted by the government—only in passing, as a side observation.  I would hold the issue was waived and affirm the district court's judgment.