**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4160
_____

CAMERON J. KITKO,
                                        Appellant

v.

POLICE OFFICER RANDALL J. YOUNG, in his Individual capacity;
LISA A. ROSSI; WILLIAM A. SHAW, JR., in his official
and individual capacities as District Attorney of Clearfield County
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 10-cv-00189)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Under Third Circuit LAR 34.1(a)
June 10, 2014
_____

Before: AMBRO, GREENBERG and BARRY, Circuit Judges

(Opinion Filed: July 29, 2014)
_____

OPINION
_____

BARRY, Circuit Judge

    Cameron Kitko ("Cameron") appeals the dismissal of his claims under 42 U.S.C. §

1983 against Clearfield County; its District Attorney, William Shaw, Jr.; Officer Randall

Young ("Young"); and Lisa Rossi ("Rossi"), a complaining witness against Cameron's brother, Walter Kitko ("Walter").[1] Cameron claims that appellees effected an illegal search of his home during an investigation of his brother for having invaded Rossi's privacy. The District Court granted Rossi, Shaw, and Clearfield County's motions to dismiss, and, later, Young's motion for summary judgment. We will affirm.

I

In 2004, Walter and Rossi began an intimate relationship they made efforts to conceal. At the beginning of the relationship, the two would meet, among other places, in the premises subject to the search—Cameron's home in Punxsutawney, Pennsylvania, a town located in Jefferson County (the "Punxsutawney Home"). Walter eventually moved into the Punxsutawney Home, and lived there with his brother until July of 2008. The parties dispute the extent to which Walter continued to use the home as a secondary residence after that date.

In July 2009, Walter and Rossi ended their relationship. In September, Rossi complained to authorities that Walter was harassing her with threatening voicemail and text messages. Young investigated. After speaking with Rossi, Young left Walter a voice message, prompting Walter to switch to a new phone number from which he continued to contact Rossi. Nine days later, Young left another message for Walter

---

[1] Cameron's second amended complaint failed to name Clearfield County as a defendant, and, as a result, Clearfield County was not listed on the docket of the District Court or of this Court. However, that complaint clearly included a claim against the County, the District Court ordered dismissal of the claim, Cameron seeks appellate review of that order on appeal, and the County has appeared and defended itself on appeal.

threatening him with arrest unless he stopped the calls. Walter, again, changed his phone number in response to the message, and the harassment of Rossi quickly escalated. In addition to sending threatening messages to her, Walter began transmitting sexually explicit images of Rossi to her ex-husband, using the new, third, phone number. He continued sending the images until January 2010.

According to Young, Rossi claimed that Walter had often asked to take sexually explicit pictures of her, that she had consistently refused, and that Walter admitted to having purchased equipment allowing him to surreptitiously record her. When asked where the pictures were taken, Rossi named two locations. The first was Walter's primary residence located in Anita, Pennsylvania. The second was the Punxsutawney Home, which Rossi claimed Walter owned and in which he stayed from time to time.

Several facts corroborated Rossi's account that Walter used the Punxsutawney Home as a part-time residence. Young served subpoenas on wireless providers seeking subscriber information for the three phone numbers used by Walter. The responses indicated that the accounts associated with the first two numbers were registered to Walter using the Punxsutawney address. Young also noticed that Walter's primary residence in Anita, Pennsylvania was up for sale.

On February 3, 2010, Young applied for a warrant to search the Punxsutawney Home for items including cell phones, account information, equipment for recording and storing sexually explicit images and videos of Rossi, and the recordings themselves. Because the warrant would be executed in neighboring Jefferson County, Young had

3

Clearfield County District Attorney William Shaw, Jr., personally review the application. After Shaw approved the application, Young obtained the warrant from a magistrate in Jefferson County, as well as a second warrant to search Walter's home in Anita, also in Jefferson County, and not challenged here.

The officers conducting the search of the Punxsutawney Home seized a box for a wireless camera, two cameras, and four cell phones, among other equipment. Young participated in the search of Walter's home in Anita, during which numerous sexually explicit tapes of Walter and Rossi were seized. Walter was charged with and eventually pled guilty to three counts of invasion of privacy.

On July 16, 2010, Cameron filed this action against Young, Clearfield County, and Rossi. After the defendants moved to dismiss, Cameron's attorney withdrew from the case. On November 22, 2010, Cameron, proceeding pro se, filed an amended complaint, and the defendants again moved to dismiss. On January 10, 2011, Cameron filed a second amended complaint, which added Shaw as a defendant (and, apparently mistakenly, removed Clearfield County as one).

The second amended complaint, the operative complaint here, included claims under 42 U.S.C. § 1983 alleging that the warrant prepared by Young and approved by Shaw was obtained in violation of Pennsylvania law and unsupported by probable cause, that Rossi conspired with Young to conduct the search, and that Clearfield County was

4

also responsible.[2]  The defendants, once again, moved to dismiss, and in opposing the motions, Cameron, once again, sought leave to amend his complaint.

On February 7, 2012, the District Court dismissed all claims against Rossi, Shaw, and Clearfield County with prejudice, but permitted the claim that Young deprived Cameron of his Fourth Amendment rights to move forward.  The Court found that Cameron had pleaded facts sufficient to demonstrate that the warrant to search his home was issued on the basis of a materially false affidavit, but had failed to adequately allege that any defendant other than Young would be responsible.

Cameron retained counsel.  He repeatedly moved to amend his complaint, which motions the District Court denied in orders dated May 31, 2012 and January 9, 2013.  After discovery, Young moved for summary judgment.  On September 20, 2013, the Court granted the motion, finding that the warrant affidavit was supported by probable cause and did not contain any knowingly or recklessly made materially false statements.  This appeal followed.

## II[3]

### A. Officer Young

We exercise plenary review of an order granting summary judgment.  See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).  "A court may grant summary judgment only

---

[2] Cameron also alleged a civil rights claim for violations of the Fourteenth Amendment, as well as various state law claims.  He does not challenge the dismissal of those claims on appeal.

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction under 28 U.S.C. § 1291.

when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (internal quotation marks omitted). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," but the "mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." Id. (internal quotation marks omitted).

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a constitutional right. See Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011). Cameron argues that the search of his home violated his rights under the Fourth Amendment because (1) the warrant affidavit, on its face, did not establish probable cause that evidence of Walter's invasion of privacy crimes would be found at the Punxsutawney Home, (2) the warrant relied on statements from Rossi that Young knew to be materially false, and (3) Young violated Pennsylvania's Municipal Police Jurisdiction Act in obtaining the warrant.

Cameron's arguments are lacking in merit. Probable cause for a search exists when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Proof beyond a reasonable doubt is not required. Id. at 235. "[O]ur role is limited to ensuring that [the] magistrate had a 'substantial basis' for concluding that the affidavit supporting the warrant established probable cause,"

6

confining our review "to the facts that were before the magistrate judge, i.e., the affidavit," and ignoring "information from other portions of the record." United States v. Miknevich, 638 F.3d 178, 181 (3d Cir. 2011) (footnote and internal quotation marks omitted). "Even if [we] would not have found probable cause in a particular case, [we] must nevertheless uphold a warrant so long as the issuing magistrate's determination was made consistent with the minimal substantial basis standard." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).

The warrant affidavit easily satisfied that minimal standard. It stated that Walter transmitted sexually explicit recordings of Rossi, and that, according to Rossi, he made one of the recordings at the Punxsutawney Home. The affidavit contained additional reasons to believe Walter's recordings and equipment would be found there: two of the three cell phone accounts used to contact Rossi were registered using the address of the home, Rossi claimed Walter owned the home and used it as a part-time residence, and Walter's primary residence in Anita, Pennsylvania was on the market.

Cameron argues that the subscriber information tying the two phone numbers to the Punxsutawney address was stale by the time Young applied for the search warrant, which was roughly four months after Walter had last used either of the phones to contact Rossi. While we have recognized that evidence can become stale if not acted upon quickly, we have hesitated to do so where the crime was ongoing at the time of the search. See United States v. Urban, 404 F.3d 754, 774 (3d Cir. 2005) ("[W]here the facts adduced to support probable cause describe a course or pattern of ongoing and

7

continuous criminality, the passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance."). There is no dispute that Walter transmitted sexually explicit images until early January 2010, which was less than a month before the warrant was issued. Indeed, the only reason that the subscriber information became dated at all was that Walter had switched to a new cell phone number to continue his harassment of Rossi, even after having been threatened with arrest if he did so.

Cameron's argument that the affidavit contained false statements fares no better. To defeat probable cause, misstatements in a warrant affidavit must be "material, or necessary, to the finding of probable cause," and must be made "knowingly and deliberately, or with a reckless disregard for the truth." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks omitted). Errors are material only if a "'corrected' warrant affidavit would establish probable cause." Id. at 789; see United States v. Yusuf, 461 F.3d 374, 383-84 (3d Cir. 2006).

Cameron claims that nearly every statement connecting Walter to the Punxsutawney Home and naming Rossi as the source of information was false, and that Young knew or should have known that the statements were false because Rossi, in her deposition, denied having ever made them. But the referenced deposition testimony shows no such thing. In it, Rossi merely confirms that she told Young that Walter owned the Punxsutawney Home, that one of the illicit recordings took place at the home, and that Walter possessed surveillance equipment. The only statement contained in the

8

affidavit that Rossi does not recall telling Young concerned how often Walter stayed there. Even if that statement was a deliberate misstatement, it was not material in light of the other evidence connecting Walter to the location to be searched. The subpoenaed account records listing the Punxsutawney address as Walter's and Rossi's belief that one of the recordings took place there provided sufficient reason to believe that equipment and recordings would be found at that location.

Cameron also claims that Young failed to obtain permission from an appropriate judicial or law enforcement officer in Jefferson County before obtaining the warrant, as required by Pennsylvania's Municipal Police Jurisdiction Act, 42 Pa. Cons. Stat. Ann. § 8953(a)(1). We fail to see the constitutional significance of that violation of state law, if indeed there was a violation. See Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004) ("Section 1983 does not provide a cause of action for violations of state statutes.") (internal quotation marks omitted). The one case Cameron cites in support, United States v. Master, 614 F.3d 236 (6th Cir. 2010), is inapposite. In Master, the magistrate issued a warrant to search a house located outside his jurisdiction. Because the magistrate lacked authority to do so, the court found that the warrant was void ab initio. Here, a magistrate in Jefferson County approved a warrant to search a home in Jefferson County. Without more, and there is no more, that is game, set, and match.

## B. Rossi, Clearfield County, and Shaw

We exercise plenary review over an order granting a motion to dismiss, and apply the same standard as the District Court. To survive a motion to dismiss under Fed. R.

9

Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Because the operative complaint here was filed pro se, it "is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

Cameron alleges that Rossi, a private party, conspired with Young to deprive him of his Fourth Amendment rights. "To prevail on a § 1983 claim, a plaintiff must establish that the defendant acted under color of state law, in other words, that there was state action." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175-76 (3d Cir. 2010). A private party "who corruptly conspire[s]" with a state official will be considered a state actor under § 1983. Id. (internal quotation marks omitted). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Id. at 178. "[A] bare assertion of conspiracy will not suffice." Twombly, 550 U.S. at 556.

The second amended complaint alleges, at most, that Rossi lied to Young about Walter's connections to the Punxsutawney Home. It does not, however, provide any basis for inferring that she did so as part of an agreement to deprive Cameron of his rights; indeed, the complaint merely states that Rossi acted "in furtherance of [a] concerted scheme, plan, design and effort." (A19 at ¶ 20.) Such a "conclusory allegation of agreement . . . does not supply facts adequate to show illegality" under the Rule 12(b)(6) standard. Great W. Mining, 615 F.3d at 176 (quoting Twombly, 550 U.S at

10

557).

Cameron's allegations against Clearfield County similarly fail to plausibly state a claim. Under § 1983, a municipality may be held liable only if "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Mulholland v. Gov't of the Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013) (internal quotation marks omitted). "Liability is imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks omitted).

The second amended complaint alleges that Clearfield County "maintained a policy, custom or practice of approving search warrants without probable cause," but pleads no factual details substantiating that claim. (A28 at ¶ 55.) It also alleges that the County, "pursuant to Clearfield Local Rule 202," maintained a "policy, custom, or practice . . . that no search warrant shall be issued absent approval of the District Attorney." (A27 ¶ 52.) Cameron insists that "only discovery in the case would have resolved" the impact of that policy on his constitutional rights. (Appellant's Br. at 19.) But under no plausible set of facts could the alleged policy, much less Shaw's approval of the warrant application, be seen as a "moving force" behind the constitutional violation asserted here, i.e., alleged misstatements by a complaining witness and a police officer. Indeed, any policy requiring an additional layer of approval from a law enforcement

11

professional would guard against harms of that kind.

Cameron made no argument in his opening brief on appeal that a plausible claim had been stated against Shaw. In his reply brief, Cameron merely states that Shaw had "implicit knowledge that [Young] lacked sufficient information linking" the Punxsutawney Home "to the crimes of Walter," and knew that "no factual support existed that [the home] was a place properly to be searched." (Reply at 3-4.) Even if we were to consider those belated and plainly waived arguments, they are utterly without support.

## C. Leave to Amend

"We review a district court decision refusing leave to amend for abuse of discretion." Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 217 (3d Cir. 2013) (internal quotation marks and alteration omitted). A district court properly refuses leave to amend if an amendment would be "inequitable or futile." Id. (internal quotation marks omitted). A plaintiff's "repeated failure to cure deficiencies by amendments previously allowed" would support such a finding. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (internal quotation marks omitted).

Noting that Cameron had two previous opportunities to amend his complaint, the District Court denied leave to amend a third time, and dismissed the claims against Rossi, Shaw, and Clearfield County with prejudice. We cannot say that it abused its discretion in doing so, and in continuing to do so as Cameron filed motion after motion for the same relief. Indeed, Cameron at no time even suggested to the Court that he had uncovered additional facts central to his claims, or, on further investigation, had identified a new

12

source of information.  And he argues to us that the motions should have been granted so that the police officers who executed the warrant could be named defendants because (and only because) they had a "common police interest" with Young (Appellant's Br. at 14)—they knew, or should have known, of this lawsuit because they were members of the same department as Young and, thus, potentially liable to plaintiff.  (Id. at 21.)  That is not nearly enough.

III

The orders of the District Court will be affirmed.