NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0935n.06

Case Nos. 14-3059/3456/3457

**FILED**
Dec 18, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| MICKEY FUGATE, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

**Before: MERRITT, WHITE, and DONALD, Circuit Judges.**

**MERRITT, Circuit Judge.** Defendant Mickey Fugate appeals the district court's denial of his motion to suppress based on the "good-faith" exception to the exclusionary rule and the district court's imposition of consecutive sentences. The motion-to-suppress issue is on appeal to this Court for the second time. A previous panel affirmed the district court's finding that defendant's Fourth Amendment rights had been violated, but remanded to the district court for consideration of whether the good-faith exception to the exclusionary rule applied to the facts in this case. *United States v. Fugate*, 499 F. App'x 514, 518 (6th Cir. 2012). On remand, the district court concluded that the good-faith exception applied. *United States v. Fugate*, No. 09-cr-165, 2013 WL 3207083 (S.D. Ohio June 24, 2013). For the following reasons, we affirm the judgment of the district court.

**I. Facts and Procedural History**

On the afternoon of November 14, 2009, a convenience store in Dayton, Ohio, was robbed at gunpoint. The perpetrator, wearing a green face mask and a dark, hooded sweatshirt, shot the store clerk and discharged his firearm to force open the cash register drawer. He then escaped with a cash register drawer of money and the tip jar, taking several hundred dollars in all. He fled in a two-door black Cadillac with no visible license plate. Citizens at the scene called the Dayton police and pursued the Cadillac, remaining in contact with the police dispatcher regarding the car's location. The citizens ended their chase when the driver of the Cadillac began shooting at them.

Dayton police officer Michael Saylors was on patrol in his cruiser in the area and heard the dispatch about the nearby robbery. Dispatch provided the location of the car based on reports from the pursuing citizens. The car appeared to be circling in a small area around the convenience store. After dispatch reported that the citizens had ended their pursuit, Saylors continued to search for the Cadillac in the streets and alleys of the targeted area. Saylors would later testify that his 11 years of experience on the police force suggested to him that circling in a small area indicated the perpetrator was trying to get to a nearby house.

While driving through an alley about a half hour after the robbery and less than two miles from the store, Saylors saw the top 12-18 inches of a black car parked behind a house. The back of the house was partially enclosed by a fence, but there was an opening onto the alley adjacent to a concrete parking pad. Saylors found it "suspicious" that the car was not parked on the pad, but instead was parked between the house and an above-ground pool. Officer Saylors walked into the backyard to get a closer look and saw that the car was a black 2-door Cadillac with no

visible license plate. The driver's door was open and cash was visible inside the car. More cash, a tip jar and a money tray from a cash register drawer were on the ground nearby.

Saylors called for assistance, which arrived almost immediately due to the large police presence in the area, and included a drug-sniffing dog. The dog followed the trail of money to the front of the house. Officer Saylors asked some construction workers next door if they had seen anyone come in or out of the house and they said no. Other officers on the scene saw a license plate on the floorboard of the Cadillac and checked the number, which turned out to be registered to defendant Mickey Fugate. The officers would later testify that they thought the perpetrator was in the house because the dog had followed the trail from the car to the front door. One officer testified that he knocked on the two doors to the house—the one in the front and another door on the side of the house—and checked to see if they were locked, which they were. No one responded to the knocks. He and another officer then climbed through an open back window and found defendant inside. They immediately took him into custody and conducted a protective search of the house, where they saw a dark, hooded sweatshirt, a green face mask, a firearm and a cash register drawer. The officers did not seize the items at that time.

Based upon the observations of officers at the scene, police obtained a search warrant. Upon execution of the warrant, the sweatshirt, face mask, gun, currency and cash register tray and drawer were seized. Defendant was ultimately charged in a superseding indictment with one count of interfering with commerce by the threat or use of physical violence in violation of 18 U.S.C. § 1951(a), one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g), one count using force or threat of force to

hinder or prevent communication with a law enforcement officer, and one count of carrying, brandishing and discharging a firearm during a crime of violence.

Defendant filed a motion to suppress all the evidence, arguing that Saylors' warrantless entry into the backyard violated his Fourth Amendment rights. Specifically, defendant argued that the evidence observed in the yard, including the Cadillac, the currency and the cash drawer tray, should be suppressed. Defendant further argued that the clothing, gun, currency and cash register drawer found in the home should also be suppressed because the entry into the home was the result of the illegal entry into the yard. The government countered by arguing that the backyard was not curtilage and, even if it were, there was no Fourth Amendment violation because the Cadillac had been in plain view. It also argued that entry into the house via the open back window was justified by exigent circumstances, including the fact that the perpetrator had a gun and police had reason to believe he was in the house based on the car and items found in the yard.

Following a hearing, the district court sustained the motion to suppress, concluding that the backyard was within the curtilage of the house and that Saylors' entry was not justified by the plain view doctrine. It noted *sua sponte* that the good-faith exception pursuant to *United States v. Leon*, 468 U.S. 897, 923 (1984), did not apply because once the illegally obtained evidence was excluded from the affidavit supporting the search warrant, there was no information establishing probable cause.

The government appealed and we affirmed the district court's finding that Saylors' entry into the backyard was a Fourth Amendment violation. We rejected the government's arguments that the entry into the yard was justified by exigent circumstances or "knock and talk" because neither argument was raised below and were therefore waived. *Fugate*, 499 F. App'x at 517-18.

The case was remanded solely to determine whether the good-faith exception applied to Saylors' entry into the backyard.[1]

Relying primarily on our decision in *United States v. McClain*, 444 F.3d 556 (6th Cir. 2005), the district court found that Officer Saylors' initial warrantless entry into the backyard fell within the good-faith exception. The district court noted the "temporal and physical proximity" to the crime and that Saylors had noticed the suspicious way the car was parked between the house and the pool instead of in the designated parking area. The district court noted that a gunman was on the loose and had last been seen in the immediate vicinity, so public safety was still in jeopardy. The district court concluded that Saylors did not know he was committing a constitutional violation when he entered the yard, therefore excluding the evidence would have "no appreciable deterrent effect." 2013 WL 3207083, at *9.

The defendant entered into a conditional plea agreement, pleading guilty to the robbery count and to being a felon in possession of a firearm in exchange for the dismissal of the other counts and the right to appeal the suppression denial. The plea agreement acknowledged that defendant was subject to sentencing under the Armed Career Criminal Act, mandating a minimum sentence of 15 years on the felon-in-possession charge. The plea agreement included a sentencing range of 20-30 years and acknowledged that the guilty plea would result in revocation of supervised release in defendant's two earlier convictions, leading to an additional term of five years that the court could impose, in its discretion, consecutively to the sentence for the new convictions.

---

[1] As mentioned above, the majority in the first appeal held that, although the government did not raise before the district court the issue of whether the good-faith exception under *Leon* applied, it could address the issue on appeal because the district court had *sua sponte* raised it and found it did not apply. It then reversed and remanded for the district court to reconsider the good-faith exception. *Fugate*, 499 F. App'x at 518. On remand, the district court reversed its earlier position, finding that the good-faith exception applied in part because of the emergency nature of the situation. *Fugate*, 2013 WL 320708, at *6-*8.

At the conclusion of the sentencing hearing, the district court sentenced defendant to 188 months on the robbery charge and 300 months on the felon-in-possession charge to run concurrently. The district court also found that defendant had violated two supervised releases. It sentenced defendant to time served for each supervised release violation to be served concurrently with each other and consecutively to the 300-month sentence for the robbery and gun convictions. Defendant did not object to the sentence at the hearing.

## II. Discussion

### A. <u>Good-faith Exception to the Exclusionary Rule</u>

On remand, the district court concluded that the sole question was whether Officer Saylors' warrantless entry into the curtilage was "sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). It concluded that the officer was not culpable because the warrantless entry into the yard was "close enough to the line of validity" to make his conduct objectively reasonable. *Fugate,* 2013 WL 3207083, at *8. The district court was persuaded that Saylors had an "objectively reasonable belief" that under the circumstances his limited entry into the backyard was legally permissible due to exigent circumstances. *United States v. Daws*, 711 F.3d 725, 728 (6th Cir. 2013). There is no evidence that Saylors believed his conduct was unconstitutional or "deliberate, reckless, or grossly negligent." *Id.*

We conclude that Officer Saylors' entry into the yard without a warrant at least satisfies the *Leon* good-faith exception. Officer Saylors saw from the alley what he reasonably thought might be the getaway car. He entered the yard and reasonably believed he had found the car based on the description, as well as the cash and cash tray strewn about in the car and the yard. He discovered the car just 30 minutes after the robbery had occurred, and about 15 minutes after

the pursuing citizens had abandoned their chase. Police were actively searching for the getaway car in the area. In fact, Saylors testified that, in his experience, "whenever somebody's circling an area, that means that they're trying to get home." Supp. Hr'g Tr. at 51. The gravity of the underlying offense and the continuing danger to the local community are factors to be considered. As a general rule, police are given more leeway when the crime is serious, a dangerous felon is at large and public safety is threatened. *Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984). In this case, there is no doubt that the crime that had been committed was serious. The suspect had shot a convenience store clerk during the course of an armed robbery, and then shot at the citizens who were following him as he attempted to escape. The suspect was armed and dangerous and remained a threat to the community so long as he was at large.

## B. Sentencing

The district court imposed concurrent sentences of 300 months and 188 months for the robbery and felon-in-possession counts. This sentence falls at the midpoint of the 20-30 year sentence agreed to in the plea agreement. The district court also imposed sentences of "time served" for the two supervised release violations, to be served concurrently with each other and consecutively to the 300-month sentence. The result of imposing the supervised release sentences consecutively to the 300-month sentence is that the defendant did not get credit toward the 300-month sentence for the long period (over four years) he served between his arrest in November 2009 and the sentencing hearing in January 2014. Instead, this pre-sentencing period of incarceration was treated as consecutive to the 300-month sentence. Defendant argues on appeal that the district court did not adequately explain its reason for imposing consecutive sentences. Because defendant did not object to the sentence at the hearing, we review for plain error.

The district court engaged in extensive discussion of the factors set forth in 18 U.S.C. § 3553(a) when arriving at the 300-month sentence for the robbery and gun offenses. It discussed its reasoning for the consecutive sentence in sufficient detail when it noted the violent nature of the two earlier offenses—armed bank robbery and another convenience store robbery— where a firearm was also discharged. The district court noted the "obvious pattern" between the previous crimes and the instant offense and the need to sanction and not "ignore" defendant's multiple armed offenses. The court concluded that all this provided "ample reason to impose consecutive sentences." The court also referred to "everything else I have said" in the earlier § 3553(a) analysis, which is sufficient rationale for imposing consecutive sentences. *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012) (holding that a district court's reference to relevant discussions elsewhere during sentencing is sufficient for imposing consecutive sentences). The district court concluded that the sentence was "sufficient but not greater than necessary." When imposing a sentence for multiple terms of imprisonment, a district court may impose consecutive or concurrent terms. 18 U.S.C. § 3584(a). The Sentencing Commission's advisory policy statement recommends consecutive sentences for the revocation of supervised release. U.S.S.G. § 7B1.3(f). We find no error in the sentence.

For the foregoing reasons, we affirm the judgment of the district court.

**HELENE N. WHITE, concurring.** I concur in the affirmance but write separately because my understanding of the issue on appeal differs somewhat from the majority. The prior panel determined, based largely on the arguments made and forfeited below, that Saylors' "entry into the backyard . . . violated Fugate's Fourth Amendment rights," and remanded the case solely to determine whether "the *Leon* good-faith exception applies when officers act pursuant to a search warrant that is based on an illegal predicate search." *United States v. Fugate*, 499 F. App'x 514, 518 (6th Cir. 2012). In remanding, the panel invited the district court to evaluate the case using *United States v. McClain*, 444 F.3d 556 (6th Cir. 2005), as a yardstick.

In *McClain*, relying on *Leon*, we stated that "'evidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have believed the seizure valid.'" 444 F.3d at 566 (quoting *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989)). In that case, because the officers who executed the search warrant were objectively reasonable in relying on the warrant, we concluded that the exclusionary rule did not apply: "the officers who sought and executed the search warrants acted with good faith, and [] the facts surrounding the initial warrantless search were close enough to the line of validity to make the executing officers' belief in the validity of the search warrants objectively reasonable." *Id*.

The facts presented in Fugate's case are sufficiently analogous to *McClain* to support the district court's application of the *Leon* good-faith exception. As in *McClain*, the warrant relied on by the officers conducting the search was based on an unconstitutional entry onto the defendant's property. But, also as in *McClain*, the officer who entered the property in violation of defendant's constitutional rights did not obtain or execute the search warrant. *See id*. And, similar to *McClain*, the unconstitutional search was, for many of the reasons discussed by the

majority, "close enough to the line of validity," *see Daws*, 711 F.3d at 728; *see also Bing ex rel. Bing v. City of Whitehall, Oh.*, 456 F.3d 555 (6th Cir. 2006), to make the later reliance on the validity of the warrant by the executing officers not unreasonable.  I thus join in the affirmance.