[Cite as *State v. Dulaney*, 2013-Ohio-3985.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 11-12-04

    v.

VARAINA C. DULANEY,             O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Paulding County Common Pleas Court
Trial Court No. CR 12 521

Judgment Reversed and Cause Remanded

Date of Decision:   September 16, 2013


APPEARANCES:

    *Peter R. Seibel*  for Appellant

    *Joseph R. Burkard and Matthew A. Miller*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Varaina Dulaney, appeals the judgment of the Court of Common Pleas of Paulding County convicting her of aggravated vehicular homicide and sentencing her to an 18-month prison term. On appeal, Dulaney argues that the trial court erred in denying her motion to suppress evidence obtained pursuant to a purportedly invalid search warrant. For the reasons that follow, we reverse the trial court's judgment.

{¶2} On February 10, 2012, the Paulding County Grand Jury indicted Dulaney with aggravated vehicular assault in violation of R.C. 2903.08(A)(2), a felony of the fourth degree, and aggravated vehicular homicide in violation of R.C. 2903.06(A)(2), a felony of the third degree. The indictment arose from a fatal automobile accident that occurred on November 27, 2011 in Paulding County. At approximately 2:30 a.m. that morning, Dulaney was driving an automobile containing her, Michael Breckler, and Dustin Coil. When Dulaney lost control of the vehicle, it rolled and Coil was ejected from the vehicle. Coil died from his injuries while Breckler suffered a fractured pelvis. Dulaney did not suffer any serious injuries.

{¶3} On April 23, 2012, Dulaney filed a motion to suppress any blood alcohol test results obtained from the seizure of samples of her blood. The basis for the motion was that the search and seizure was executed pursuant to an invalid

warrant. The trial court subsequently conducted a suppression hearing on June 4, 2012. Due to a recording malfunction, we have no transcript from a portion of the suppression hearing that is relevant to this appeal. Under App.R. 9(E), the parties have filed a stipulation of facts to correct this deficiency and to supplement the record before this court.

{¶4} The search warrant for the seizure of Dulaney's blood samples was signed on November 30, 2011 by a judge of the Paulding County county court.[1] The warrant authorized the seizure of the samples from Defiance Regional Medical Center in Defiance County, Ohio. Before obtaining the warrant, Ohio State Highway Patrol Trooper Alec Coil originally asked a judge of the Defiance Municipal Court to sign it on either November 28 or 29. However, the municipal court judge refused to sign the warrant because the accident occurred in Paulding County, Ohio, which is not within the territorial jurisdiction of Defiance Municipal Court. Trooper Coil executed the search warrant on November 30, 2011 in Defiance County and Dulaney's blood samples were tested for the presence of alcohol and other drugs.

{¶5} On June 8, 2012, the trial court issued a judgment entry denying Dulaney's motion to suppress. Although the trial court found that the State failed

---

[1] Pursuant to R.C. 1907.11(A), the proper term for the court at issue in this matter is the "Paulding County county court." Despite the seeming redundancy of this terminology, we have elected to use this statutory term out of deference to the General Assembly, which is responsible for the court's creation.

to comply with Crim.R. 41 when obtaining the search warrant, it nevertheless found that the State's failure did not violate Dulaney's Fourth Amendment rights.

{¶6} After the trial court's denial of her motion to suppress, the State dismissed the charge of aggravated vehicular assault and Dulaney entered a plea of no contest to the remaining charge of aggravated vehicular homicide. On October 25, 2012, the trial court sentenced Dulaney to 18 months in prison.

{¶7} Dulaney filed this timely appeal, presenting the following assignment of error for our review.

### *Assignment of Error*

**THE COURT ERRED WHEN IT FAILED TO SUPPRESS EVIDENCE WHICH WAS SEIZED IN DEFIANCE COUNTY, OHIO ON A WARRANT WHICH HAD BEEN SIGNED BY A JUDGE IN PAULDING COUNTY, OHIO (OHIO RULES OF CRIMINAL PROCEDURE RULE 41).**

{¶8} In her sole assignment of error, Dulaney argues that the trial court should have suppressed the blood alcohol test results obtained from the purportedly illegal seizure of her blood samples. We find that the trial court erroneously denied Dulaney's motion to suppress on the basis that there was no Fourth Amendment violation. As a result, we reverse the trial court's ruling on the motion to suppress insofar as it found that the State did not violate Dulaney's Fourth Amendment rights when it seized her blood samples pursuant to an invalid warrant. Nevertheless, we cannot conclude that suppression was the necessary

remedy for the unconstitutional seizure. Rather, we remand this matter to the trial court for further proceedings so that it can determine whether suppression of the blood samples is appropriate.

*Standard of Review for Motions to Suppress*

{¶9} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist. 2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

*Crim.R. 41(A) and R.C. 2933.21*

{¶10} Crim.R. 41(A) provides that "[a] search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction, upon the request of a prosecuting attorney or a law enforcement officer." R.C. 2933.21 similarly provides that "[a] judge of a court of record may, within his jurisdiction, issue warrants to search a

house or place." R.C. 2933.21. "Fundamental" violations of Crim.R. 41 and R.C. 2933.21 are those that implicate constitutional concerns, *State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, ¶ 20 (2d Dist.), and they occur where the warrant was either not based on probable cause or not issued by a neutral and detached judge, *State v. Ridenour*, 4th Dist. Meigs No. 09CA13, 2010-Ohio-3373, ¶ 21. With these principles in mind, we turn to the issue around which this matter revolves: whether the Paulding County county court judge who issued the search warrant was a judge for Fourth Amendment purposes.

*The Issuing Judge's Authority to Issue Search Warrants*

{¶11} One of the "defining features" of a constitutionally executed search warrant is that it was "issued by a judicial officer." *United States v. Kone*, 591 F.Supp.2d 593, 605 (S.D.N.Y. 2008). The United States Supreme Court "frequently * * * employ[s] the term 'magistrate' to denote those public officials who may issue warrants."[2] *Shadwick v. City of Tampa*, 407 U.S. 345, 348, 92 S.Ct. 2119 (1972). The Court has defined "magistrate" as "a public civil officer, possessing such power – legislative, executive, or judicial – as the government appointing him may ordain." *Compton v. Alabama*, 214 U.S. 1, 7, 29 S.Ct. 605 (1909). As such, a judge/magistrate for Fourth Amendment purposes is an

---

[2] This court does not engage in this practice of using "magistrate" to refer to the issuing authorities for search warrants because Ohio law does not allow "magistrates" to issue search warrants. *E.g.*, *State v. Commis*, 12th Dist. Clinton Nos. CA2009-06-004, CA2009-06-005, 2009-Ohio-6415, ¶ 22 (finding that search warrant signed by a magistrate was invalid because "to be valid, a search warrant must be signed by a judge, and can only be signed by a judge, prior to the search").

individual who is a "public officer authorized by law to issue search warrants." *State v. Hardy*, 2d Dist. Montgomery No. 16964 (Aug. 2, 1998) (Fain, J., concurring); *accord United States v. Griffin*, E.D.Wis. No. 11-CA-30, 2011 WL 3348027, *6 (Aug. 2, 2011) (stating that a requirement for qualification as a judge under the Fourth Amendment is "that the issuing official has some cognizable authority under state law to issue warrants"); *see also United States v. Bansal*, 663 F.3d 634, 662 (3d Cir. 2011) (finding no constitutional violation where magistrate in Eastern District of Pennsylvania issued warrant for search and seizure of property located in California because federal statute authorized the magistrate to issue warrants for disclosure of electronic communications located outside of the court's jurisdiction so long as the offense under investigation was within the court's jurisdiction); *Ciano v. State*, 105 Ohio St. 229, 233 (1922) ("Although [a previous form of R.C. 2933.21] confers authority upon common pleas judges, along with other officials therein named, to issue search warrants upon the filing of an affidavit * * * common pleas judges were not so authorized at the time such action was taken in this case, and *in the absence of such statutory authority* the search warrant issued by the common pleas judge was unwarranted and invalid"). Based on these principles, federal courts have previously found that both municipal court clerks, *Shadwick* at 347-48, and circuit court commissioners,

*Griffin*, *supra*, that are vested with authority under state law to issue search warrants are judges for Fourth Amendment purposes.

{¶12} This matter is unlike *Shadwick* and *Griffin* since the Paulding County county court judge who signed the warrant for Dulaney's blood samples was not authorized under Ohio law to issue warrants for searches and seizure of property in Defiance County.[3]    R.C. 2933.21; Crim.R. 41(A).    Rather, this matter is analogous to the facts addressed in *United States v. Master*, 614 F.3d 236 (6th Cir. 2010).  There, the defendant's residence was in Coffee County, Tennessee.  Police officers searched the defendant's residence after a Franklin County, Tennessee general sessions judge issued a warrant.  Tennessee law, however, only granted the issuing judge the authority to sign warrants for the searches of property located in Franklin County.  *Id.* at 238.  The Sixth Circuit Court of Appeals found that since Tennessee law did not provide the issuing judge with the requisite authority to issue the warrant at issue, the warrant was void ab initio.  Consequently, the resulting search pursuant to the invalid warrant was unconstitutional.  The court succinctly explained its reasoning as "[the issuing judge]'s authority to issue warrants stems exclusively from Tennessee law, but that same source of law provides that [the issuing judge] had no authority to issue a warrant for a search of

---

[3] The State does not argue on appeal that the Paulding County county court judge had authority under Ohio law to issue the search warrant for the blood samples.  Even if the State did raise such an argument, we are unable to find a statute or Criminal Rule that authorizes judges of a county court to issue warrants for seizures of evidence located in a foreign county.

Defendant's home. The search therefore violated Defendant's Fourth Amendment rights." *Id.* at 241; *accord United States v. Youngbear*, N.D.Iowa No. 11-CR-151-LRR, 2012 WL 176247, *4 (Jan. 20, 2012) ("[I]f [the issuing judge] lacked the authority to issue a search warrant for evidence of a federal offense and the search warrant sought evidence solely for a federal offense, then Defendant suffered a Fourth Amendment violation.").

{¶13} The facts of this matter are indistinguishable from *Master*, which compels us to adopt its reasoning. The Paulding County county court is a creation of statute, *Pannozzo Family Ltd. Partnership v. Italian Oven of Boardman*, 7th Dist. Mahoning No. 92 C.A. 75 (Sept. 2, 1993), and its subject matter jurisdiction is limited as set forth in R.C. Chapter 1907, *Wright v. Ohio Bur. of Motor Vehicles*, 67 Ohio Misc.2d 29, 34 (M.C. 1994).[4] R.C. 1907.01 describes the jurisdiction of a county court as follows:

> There is hereby created in each county of the state, in which the territorial jurisdiction of a municipal court or municipal courts is not coextensive with the boundaries of the county, a court to be known as the county court. The county court shall have jurisdiction throughout a county court district that shall consist of all territory within the county not subject to the territorial jurisdiction of any municipal court. County courts are courts of record for all purposes of law.

Moreover, R.C. 1907.18(A) explicitly limits county court judges' authority and jurisdiction to "within and coextensive with their respective counties." Based on

---

[4] The same statutory creation and limitation applies to municipal courts. *E.g.*, *State v. Lovelace*, 1st Dist. Hamilton No. C-110715, 2012-Ohio-3797, ¶ 23.

this statutory language, the Paulding County county court judge did not have authority to sign a search warrant that authorized the seizure of Dulaney's blood samples in Defiance County. As such, under *Master*, the warrant was not executed by a judge, as that term is used for Fourth Amendment purposes, and it was void ab initio. This rendered the search and seizure pursuant to the invalid warrant a violation of Dulaney's Fourth Amendment rights.

**{¶14}** In finding that there was no Fourth Amendment violation, the trial court relied on *Ridenour*. There, a Meigs County Court of Common Pleas judge issued a search warrant for property located in Gallia County. The Fourth District found that these facts did not produce a constitutional violation. *Ridenour*, 2010-Ohio-3373, at ¶ 2. We find that *Ridenour* is distinguishable from this matter because it involved the issuance of a search warrant by a Court of Commons Pleas judge,[5] which does not raise an inference of jurisdictional and constitutional infirmity. Since the Ohio Constitution created the Court of Common Pleas, its judges are vested with statewide jurisdiction. *See* Ohio Constitution, Article IV, Section 4(A) ("There shall be a court of common pleas and such divisions thereof as may be established by law serving each county of the state. Any judge of a court of common pleas may temporarily hold court in any county."); *Cheap Escape Co. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 7

---

[5] The issuing judge in *Ridenour* was a judge of the Probate/Juvenile Division of the Meigs County Court of Common Pleas.

Case No. 11-12-04

("[C]ourts of common pleas * * * are created by the Ohio Constitution and have statewide subject-matter jurisdiction * * *."); *Wiegand v. Deutsche Bank Natl. Trust*, 8th Dist. Cuyahoga No. 97424, 2012-Ohio-933, ¶ 4 ("The Ohio Constitution created the several courts of common pleas and granted them statewide jurisdiction."); *Arlington Bank v. BEE, Inc.*, 10th Dist. Franklin No. 10AP-41, 2010-Ohio-6040, ¶ 12 ("The Ohio Constitution created the courts of common pleas and granted them statewide subject matter jurisdiction."). R.C. 2933.21 authorizes judges to issue warrants for their "jurisdiction," which, pursuant to the Ohio Constitution, exists for judges of Courts of Common Pleas throughout the state. Accordingly, unlike the judges in *Master* and this matter, the Meigs County Court of Common Pleas judge in *Ridenour* was properly authorized to issue the search warrant for the search and seizure in Gallia County. Due to this critical difference, we find that *Ridenour* offers limited guidance to the disposition of this matter.

{¶15} The State also points us to *Hardy*, *supra* in support of its argument

for affirmance.[6] There, a Dayton Municipal Court judge issued a search warrant for the search and seizure of property located in Miamisburg. The Second District found that the Dayton Municipal Court's issuance of an invalid warrant for a search outside of its jurisdiction did not result in a Fourth Amendment violation. The Tenth District's opinion in *State v. Bowman*, 10th Dist. Franklin No. 06AP-149, 2006-Ohio-6146, reached the same conclusion where the Franklin County Municipal Court issued an invalid warrant for the search and seizure of property located in Pickaway County. *Id*. at ¶ 14.

{¶16} We decline to follow *Hardy*'s and *Bowman*'s guidance here since we find that the rule of law announced in those cases is contrary to well-settled federal

---

[6] Although the State argues that we should adopt the majority opinion from *Hardy*, we approvingly note Judge Faine's concurring opinion in that matter, which pertinently and persuasively states as follows:

> Plainly, the Fourth Amendment requires that a search warrant issue from a "neutral and detached magistrate." *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367 (1948). In my view, this must refer to a public officer authorized by law to issue search warrants. No matter how neutral and detached, or generally capable, a self-appointed "magistrate" may be, or a "magistrate" designated by General Motors, for example, anyone other than a public officer authorized by law to issue search warrants cannot, in my view, be considered a magistrate for Fourth Amendment purposes.
>
> A judge of a court of record in Ohio is authorized by R.C. 2933.21(A) to issue a search warrant "within his jurisdiction." In my view, then a judge of a court of record in Ohio is not authorized by law to issue a search warrant outside of the judge's jurisdiction and can no more be considered a magistrate for Fourth Amendment purposes than anyone else lacking that authority – be that judge the finest jurist who can be found in a sister state or a foreign country.
>
> I would overrule the assignment of error in this case, and affirm, because the police officer conducting the search and seizure was in good faith in believing that he had a valid warrant, even though he in fact did not. *Once we allow for reasonable police officers within this jurisdiction to become acquainted with the territorial limits upon a magistrate's authority to issue search warrants, however, claims of good-faith exceptions to the warrant requirement are likely to be unavailing.*

(Emphasis added.) *Hardy*, *supra* (Fain, J., concurring).

-12-

interpretation of the Fourth Amendment.[7]  It is axiomatic that "[a] search warrant signed by a person who lacks the authority to issue it is void as a matter of law." *United States v. Peltier*, 344 F.Supp.2d 539, 548 (E.D.Mich. 2004); *accord United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001) ("We therefore hold that when a warrant is signed by someone who lacked the legal authority necessary to issue search warrants, the warrant is void *ab initio*."), *overruled on other grounds by Master*, 614 F.3d at 242; *United States v. Neerin*g, 194 F.Supp.2d 620, 628 (E.D.Mich. 2002) ("The Court concludes, therefore, that [the magistrate]'s lack of authority to issue the search warrant in this case rendered it void.").  *Hardy* and *Bowman* depart from this well-established axiom handed down by the federal courts, which are the final authority on the interpretation of the United States Constitution, and we find that it is more appropriate in this case to follow the federal courts' lead.  *See State v. Grays*, 8th Dist. Cuyahoga No. 82410, 2003-Ohio-6889, ¶ 22 ("Although we are aware that the state can impose stricter constitutional protections than the federal government, federal law is considered 'very persuasive' when dealing with search and seizure issues because Section 14 Article I of the Ohio Constitution and the Fourth Amendment have virtually identical language."), citing *State v. Robinette*, 80 Ohio St.3d 234, 239 (1997) (stating that the interpretation of the Fourth Amendment and Article I, Section 14

---

[7] We also note that the courts in both *Hardy* and *Bowman* found that regardless of the warrants' validity, the police officers' execution of the warrants was in good faith and consequently did not create any constitutional infirmity.  *Bowman* at ¶ 15-16; *Hardy*, *surpa*.

of the Ohio Constitution should be "harmonize[d]"); *State v. Barlow*, 6th Dist. Wood No. WD-83-80 (Apr. 20, 1984) (Handwork, J., dissenting) ("Of course, state courts are free to interpret the provisions of the federal constitution, but, in our federal system, they are not the final arbiters of what such provisions mean – only the federal courts are."); *City of Cleveland v. Watts*, 164 Ohio Misc.2d 25, 2011-Ohio-3606, ¶ 6 (M.C.) ("[D]ecisions from the Federal Court of Appeals are entitled to due consideration and respect.").

**{¶17}** Moreover, we view *Hardy* and *Bowman* as improper extensions of the Ohio Supreme Court's decision in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986).[8] In *Wilmoth*, the court created a test to distinguish between "fundamental" and "non-fundamental" violations of Crim.R. 41. *Id*. at 262-63. There, the court addressed a situation where the State violated the affidavit requirements contained in Crim.R. 41(C). Specifically, the investigating officers made unsworn oral statements to the issuing judge and submitted their police reports to support the issuance of the warrant. However, they did not submit written affidavits that contained the same information, as required by the rule. *Id*. at 252-53. The court concluded that the violation was merely "technical" in nature and did not implicate questions of constitutionality. *Id*. at 264.

---

[8] Both the Second and Tenth District relied on the rule announced in *Wilmoth* in reaching its conclusion. *See Bowman*, 2006-Ohio-6146, at ¶ 14; *Hardy*, *supra*.

{¶18} The jurisdictional violations present here, as well as in *Hardy* and *Bowman*, are of much greater importance than the merely technical affidavit defects in *Wilmoth*. *Compare United States v. Beals*, 698 F.3d 248, 265 (6th Cir. 2012) (finding no constitutional violation where the issuing judge failed to prepare two exact copies of the warrant because the issuing judge "had authority under state law to issue search warrants, and his failure to sign two copies of the search warrant did not in any way deprive him of that authority") *with Master*, 614 F.3d at 515 (finding constitutional violation where issuing judge had no authority to issue search warrants for search and seizure of property located in another county). The Fourth Amendment simply requires that a warrant be supported by probable cause and be issued by a neutral and detached judge who had authority to issue it. As such, in *Wilmoth*, neither prong of the Fourth Amendment analysis was lacking – the warrant was both supported by probable cause and issued by a judge with the proper authority. The merely technical defects of the affidavit had zero effect on either prong.

{¶19} The same cannot be said for the facts present in this matter or for the facts that were addressed in *Hardy* and *Bowman*. The Paulding County county court judge, like the Dayton Municipal Court and Franklin County Municipal Court judges, manifestly lacked the statutory authority to issue the search warrant for property located in a foreign county, outside of her jurisdiction. Consequently,

the second prong of the Fourth Amendment analysis requiring issuance by a "judge" is absent here and there is a clear constitutional violation.

{¶20} In sum, the Paulding County county court judge lacked statutory authority to issue a search warrant for Dulaney's blood samples located in Defiance County. Under well-settled federal law, this lack of authority indicates that the issuing judge was not a judge for Fourth Amendment purposes and renders the warrant void ab initio. Accordingly, the investigating officers executed their search pursuant to an invalid warrant in violation of the Fourth Amendment. The trial court's finding to the contrary was in error and requires that we reverse its judgment.

*Suppression of the Evidence*

{¶21} Although we find that the search and seizure violated the Fourth Amendment, it is well-settled that not all Fourth Amendment violations give rise to suppression of the evidence illegally obtained. *See, e.g.*, *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S.Ct. 2159 (2006) ("Suppression of evidence * * * has always been our last resort, not our first impulse."); *Arizona v. Evans*, 514 U.S. 1, 13, 115 S.Ct. 1185 (1995) ("In *Whiteley* [*v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031 (1971)], the Court treated identification of a Fourth Amendment violation as synonymous with application of the exclusionary rule to evidence secured incident to that violation. Subsequent case law has rejected this

reflexive application of the exclusionary rule."); *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405 (1984) ("Whether the exclusionary sanction is appropriately imposed in a particular case * * * is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule was violated by police conduct."). Accordingly, our finding that the seizure of Dulaney's blood samples violated the Fourth Amendment does not end our inquiry. Rather, our finding mandates that we must determine whether we should wield the exclusionary rule to suppress the evidence obtained from the illegal seizure.

{¶22} When determining whether suppression is appropriate, courts must consider the policy consequences and goals of the exclusionary rule. On the one hand, the exclusionary rule's application may cause "the loss of probative evidence and the secondary costs that arise from the 'less accurate and more cumbersome adjudication that therefore occurs.'" *State ex rel. Wright v. Adult Parole Auth.*, 75 Ohio St.3d 82, 89 (1996), quoting *Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1041, 104 S.Ct. 3479 (1984). Conversely, the United States Supreme Court has noted that "[t]he exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Evans* at 10. As a result of these conflicting policy considerations, courts

are required to engage in a balancing test that weighs the benefits of applying the rule versus its costs.[9] *Master*, 614 F.3d at 243, citing *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695 (2009). If the benefits outweigh the costs, then suppression is appropriate. *Id.*

{¶23} Here, the trial court found that the State did not violate the Fourth Amendment when it seized Dulaney's blood samples pursuant to an invalid search warrant. We have concluded otherwise and reversed the trial court's decision in that regard. Based on its erroneous decision regarding the Fourth Amendment violation, the trial court never reached the issue of whether suppression was appropriate. Since it never reached this issue, the appropriate disposition is to remand this matter to the trial court so that it may consider whether suppression is appropriate based on the principles we enunciated above. *See id.* (remanding matter so that trial court could conduct the above balancing test); *State v. Oliver*, 112 Ohio St.3d 447, 2007-Ohio-372, ¶ 13 (same).

{¶24} In sum, we reverse the trial court's denial of Dulaney's motion to suppress, which was based on that court's finding that there was no Fourth Amendment violation. We find that the seizure of Dulaney's blood samples violated her Fourth Amendment rights. Nevertheless, we remand this matter to the

---

[9] Trial courts should also consider the general background of the Fourth Amendment and the precious rights that it protects. *See Lopez v. United States*, 373 U.S. 427, 464, 83 S.Ct. 1381 (1963) (Brennan, J., dissenting) ("The requirements of the Fourth Amendment are not technical or unreasonably strident; they are bedrock rules without which there would be no effective protection of the right to personal liberty.").

trial court so that it can determine whether suppression is the appropriate remedy for the Fourth Amendment violation based on the principles enunciated in *Master* and any other relevant issues. These other relevant issues may include any potential misconduct by Trooper Coil in procuring the search warrant, *see Bowman*, 2006-Ohio-6146, at ¶ 13 (stating that evidence of police misconduct could support suppression of evidence), and the potential applicability of exclusionary rule exceptions, such as the good faith exception, *see State v. George*, 45 Ohio St.3d 325(1989) (describing the applicable standard for the good faith exception).

{¶25} Accordingly, we sustain Dulaney's sole assignment of error.

{¶26} Having found error prejudicial to Dulaney, in the particulars assigned and argued, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**