[Cite as *State v. Miller*, 2014-Ohio-4998.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 9-13-27

    v.

STACEY L. MILLER,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 11-CR-551

**Judgment Reversed and Cause Remanded**

Date of Decision: November 10, 2014

APPEARANCES:

    *Valerie Kunze* for Appellant

    *Brent W. Yager* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Stacey L. Miller, appeals the judgment of the Court of Common Pleas of Marion County convicting him of one count of robbery, six counts of theft, one count of possession of heroin, three counts of receiving stolen property, one count of aggravated robbery, two counts of tampering with evidence, and one count of possession of criminal tools, and sentencing him to an aggregate prison term of 28 years. On appeal, Miller argues that the trial court erred by: (1) denying him his right to self-representation; (2) failing to dismiss nine counts in his indictment that took place in other counties besides Marion County; (3) abusing its discretion by allowing evidence of an unrelated and uncharged robbery; (4) entering a guilty verdict that was based on insufficient evidence; (5) convicting him of a felony of the fifth degree for his charge of possession of criminal tools when the verdict form failed to comply with R.C. 2945.75(A)(2); and (6) imposing consecutive sentences. For the reasons that follow, we reverse the trial court's judgment.

{¶2} On October 13, 2011, the Marion County Grand Jury indicted Miller on one count of robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree[1]; two counts of theft in violation of R.C. 2913.02(A)(1), felonies of the fourth degree; one count of possession of heroin in violation of R.C.

---

[1] On December 21, 2011, the State's first supplemental indictment was filed as to count one to include a repeat violent offender specification in violation of R.C. 2929.14(D)(2)/2941.149. (Docket No. 27, p. 1).

2925.11(A)/(C)(6), a felony of the fifth degree; and two counts of receiving stolen property in violation of R.C. 2913.51(A), felonies of the fifth degree. All six counts stated that the offenses occurred in Marion County. However, on January 30, 2012, the State filed a motion to amend indictment as to Counts 5 and 6 in order to change the location from Marion County to Wyandot County. (Docket No. 76, p. 1). Then, on February 3, 2012, the State filed a revised motion to amend indictment stating that Counts 5 and 6 actually occurred in Crawford County. (Docket No. 109, p. 1). No judgment entry was filed that either granted or denied the State's motions to amend. On March 22, 2012, Miller filed a pro se motion to dismiss Counts 5 and 6. In his motion, Miller argued that he was not charged in either of the jurisdictions where the license plates were stolen or received, and that the State failed to explain what element of Counts 5 and 6 occurred in Marion County. Accordingly, Miller asked the court to dismiss these counts.

{¶3} On April 24, 2012, the Marion County Grand Jury, in a second supplemental indictment, indicted Miller on another count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. A third supplemental indictment was filed on May 10, 2012. The Marion County Grand Jury indicted Miller on eight additional counts: one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree; four counts of theft in

violation of R.C. 2913.02(A)(1), felonies of the fifth degree; two counts of tampering with evidence in violation of R.C. 2921.12(A)(1), felonies of the third degree; and one count of possession of criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree. Notably, the third supplemental indictment contained six counts that occurred in counties other than Marion County.[2] For example, Count 8 stated:

> **COUNT 8 – Aggravated Robbery [R.C. 2911.01(A)(1)], F1**
>
> **STACEY L. MILLER,** as part of a course of criminal conduct, *in Crawford County*, did on or about September 30, 2011, did, in attempting or committing a theft offense, as defined in R.C. 2913.01, or in fleeing immediately after the attempt or offense, have a deadly weapon on or about his person or under his control and either display the weapon, brandish it, indicate the Defendant possessed it, or use it.

(Boldface sic.) (Emphasis added.) (Docket No. 256, p. 1).

{¶4} On May 16, 2012, Miller filed a pro se motion to dismiss Counts 8, 9, 10, 11, 12, and 13. (Docket No. 286). In his motion, Miller alleged that the trial court did not have jurisdiction over these counts since they occurred in different counties.

{¶5} On January 4, 2013, the trial court filed an entry finding that Miller's motion to dismiss was not ripe for review. Specifically, the trial court stated that these issues "cannot be determined until the actual trial of the case. Whether or

---

[2] Counts 8-13 stated the offenses occurred in Crawford, Wyandot, and Delaware Counties, whereas counts 14 and 15 occurred in Marion County.

not the addition of the out of county Indictment counts are proper or not depends on whether said actions were part of the course of a continuing conduct, showing a similar modus operandi or common plan or scheme." (Docket No. 355, p. 2). The trial court stated that if there was such a relation, Counts 8-13 were appropriate; however, if no such relation was established at trial, it would dismiss Counts 8-13. (*Id.*).

{¶6} On March 13, 2013, the State filed a motion to amend Count 15 of the supplemental indictment.[3] The State filed the motion to correct a "typographical error[4] by changing the location from Marion County to 'as part of a criminal course of conduct in Crawford County, Ohio.' " (Docket No. 436, p. 1). No entry was filed that either granted or denied the State's third motion to amend indictment.[5]

---

[3] To clarify, this was the State's *third* motion to amend its *third* supplemental indictment.

[4] We understand a "typographical error" to mean a mistake made in the typing process, perhaps a misspelling of a word or leaving a word out of a sentence. Mistaking what county a crime occurred in is more than a mere "typographical error" and a serious oversight on behalf of the State. We are also concerned as to the testimony presented to the grand jury. For example, did the State actually present evidence that these crimes occurred in Marion County, as the original indictments alleged? Or did they present evidence that the crimes occurred in the correct counties, but for whatever reason, inserted the wrong counties in the indictment?

[5] We are confused as to why the trial court did not rule on any of the State's motions to amend the indictments. Crim.R. 7 explicitly states that the trial court must act in order to amend the indictment. ("*The court* may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars * * *."); *State v. Pepka*, 125 Ohio St.3d 124, 2010-Ohio-1045, ¶ 24 ("Because the original indictment was sufficient to charge appellee with third-degree-felony child endangering, *the trial court* did not err in *granting* the state's motion to amend the indictment."); *State v. Fryling*, 85 Ohio App.3d 557, 562 (3d Dist.1992) (finding the *trial court* had authority to amend the indictment). Typically, when a trial court fails to rule upon a motion, it will be presumed that the motion was overruled. *Georgeoff v. O'Brien*, 105 Ohio App.3d 373, 378 (9th Dist.1995). However, because both parties proceeded as if the court granted the motions, we will proceed as if the trial court had granted these motions.

{¶7} On May 2, 2012, the State filed a motion asking the court to rule on the admissibility of other acts evidence that the State intended to introduce at trial, which would implicate Miller in two additional robberies and the theft of several license plates and a cell phone, pursuant to Evid.R. 404(B) and R.C. 2945.59. (Docket No. 235, p. 1). Specifically, the State alleged that identity would be an issue at trial as Miller had denied being the perpetrator of any of the robberies. Further, the State sought to use the other acts evidence to establish Miller's "motive, knowledge, scheme, plan and preparation for the Marion General robbery." (*Id.* at p. 6). On January 4, 2013, the trial court ruled on the State's motion stating that unindicted conduct will only be admissible if the "proffered evidence is closely related in nature, time and place to the indicted offenses against the Defendant." (Docket No. 355, p. 2).

{¶8} On the second day of trial, outside the purview of the jury, the State and the trial court had the following relevant exchange regarding the State's other acts evidence:

> Trial Court: I guess that the problem that I am having here, you are showing there is [sic] some bad acts, but not showing that it's him doing the acts. You are building an inference on inferences. You have the inference, similar guy, there is an inference which is okay, but building the inference on inference that this particular guy is doing it, I think that is problematic.
>
> State: The way the robbery is committed, you don't have to refer the manner in which the robbery is committed and the facts and

circumstances that the robbery is committed and allows the inference it's him that did it.

Trial Court: The vast majority of the cases that the Defendant is doing, the bad acts, the whole issue is if he's doing the acts that he's charged, bad acts brought in exception when it's clear that the Defendant is doing the bad acts, we don't know that, is what you are telling me? That is the problem that the Court has with this from what you are saying the vast number of cases.

Matter of fact, what I've seen dealing with bad acts, the Defendant doing the bad acts, you know, you don't have that from what you are proffering to me.

* * *

Trial Court: I will tell you not to allow it in, but if you have the case authority or whatever on it, I will do further research on it myself. I don't see myself ruling on it today, I will take a look at it this evening and figure out where we go from there. Anything else to cover?

Trial Tr., Volume II, p. 165-167.

{¶9} On the third day of trial, an off the record discussion was had regarding the other acts evidence. Trial Tr., Volume III, p. 4. The trial court then stated, on the record, that "[w]e need the evidence brought in." *Id.* at p. 5. The trial court gave no further explanation.

{¶10} The trial of this matter commenced on March 19, 2013, and ended on March 26, 2013. At trial, evidence was presented that a Rich Oil gas station, in Galion, Ohio, was robbed on September 30, 2011. Stephanie Stratton, a gas station attendant, was working that day. She testified that the assailant put a gun to her head and demanded money. Stratton was able to identify the assailant as a

white male. She also stated that he was also wearing a blond wig and drove a silver Hyundai Santa Fe. Stratton was also able to remember the suspect's license plates, which matched a set of license plates that were reported stolen. The blond wig and gun were never recovered. At trial, Stratton identified Miller as the man who robbed the gas station.

{¶11} On October 1, 2011, a woman was robbed in a Kroger parking lot in Marion, Ohio. The assailant jumped out of a white colored SUV and demanded the woman's purse. The woman was unable to get a good look at her assailant as he was wearing a bandana around his face. The woman was able to recall a partial license plate number for the assailant. The number matched the license plates of Sarah Shonk, who eventually discovered that her license plates had been stolen.

{¶12} Evidence was also presented that on October 7, 2011, a robbery occurred at the Marion General Hospital parking lot. Maxine Reed, a 77-year-old volunteer for the hospital, was walking from her car when a man in a silver Hyundai Santa Fe exited his car and demanded her purse. The assailant was again wearing a blond wig. The volunteer was able to memorize the attacker's license plates, which were reported stolen from another vehicle. Reed's stolen purse was never recovered.

{¶13} On the evening of October 8, 2011, Trooper Jones of the Ohio Highway Patrol pursued a silver Hyundai Santa Fe for a speeding violation. The

vehicle did not stop for Trooper Jones and a chase ensued. Trooper Jones eventually found the Hyundai Santa Fe stopped at the side of the road. The vehicle's driver's side door was open, and no one was in the vehicle. The car belonged to Miller, and Miller's wallet was found in the car's center console. Additionally, the car had two separate stolen plates on it. Miller's license plates were found below the stolen plates. In the car, police officers found a black wig, a ski mask, pellet gun, and a cordless drill with sockets that would fit the bolts on a license plate.

{¶14} Evidence was also presented that Ashley Roe's car was broken into in the early morning hours of October 9, 2011. The only thing missing from Roe's car was a cell phone. On October 10, 2011, Miller was arrested. Police officers conducted a search of Ashley Cornely's house and found a pink backpack which contained pieces of plastic paper with heroin residue and drug paraphernalia. Cornely, who was Miller's girlfriend at the time, testified that the backpack belonged to Miller. Cornely also provided police officers with Miller's two cell-phones; one of them was later discovered to be Roe's.[6]

{¶15} On March 26, 2013, the jury returned guilty verdicts on all 15 counts alleged in the indictment. This matter then proceeded to sentencing on April 22,

---

[6] We note that Miller was never charged with the theft of Roe's cell phone, yet the State presented several witnesses who testified about this other "bad act." However, on appeal Miller only challenges the State's evidence about his alleged robbery in a Kroger parking lot. Therefore, we will not discuss whether the trial court erred in allowing evidence concerning the theft of Roe's cell phone.

2013. After hearing evidence and argument relating to the issue of punishment, the trial court merged Counts 2 (theft) and 3 (theft) with Count 1 (robbery); Count 6 (theft) was merged with Count 5 (receiving stolen property); Count 12 (theft) merged with Count 7 (receiving stolen property); and Count 13 (theft) merged with Count 6 (receiving stolen property). Further, the court sentenced Miller to eight years in prison on Count 1 (robbery); 12 months in prison on Count 4 (possession of heroin); 12 months in prison on Count 5 (receiving stolen property); 180 days in jail on Count 6 (receiving stolen property); 12 months in prison for Count 7 (receiving stolen property); 11 years in prison for Count 8 (aggravated robbery); 12 months in prison for Count 9 (theft); 24 months in prison for Count 10 (tampering with evidence); 24 months in prison for Count 14 (tampering with evidence); and 12 months in prison for Count 15 (possession of criminal tools). While the trial court found that Miller was a repeat violent offender, it did not find that all of the elements of R.C. 2929.14(B)(2) were met for the additional imposition of prison time. Counts 1, 4, 5, 7, 8, 9, 10, 14, and 15 were ordered to be served consecutively, while Count 6 was to be served concurrently, for a total prison sentence of 28 years. On April 24, 2013, the trial court issued a judgment entry journalizing Miller's conviction and sentence.

{¶16} Miller timely appealed this judgment, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**STACEY MILLER WAS DENIED HIS RIGHTS TO SELF-REPRESENTATION, A FAIR TRIAL, AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDEMNTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED WHEN IT PROCEEDED TO TRIAL ON A MARION COUNTY GRAND JURY INDICTMENT THAT ALLEGED MR. MILLER COMMITED OFFENSES IN THREE COUNTIES OTHER THAN MARION COUNTY.**

*Assignment of Error No. III*

**STACEY MILLER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT ALLOWED THE STATE TO PRESENT UNRELATED AND PREJUDICIAL EVIDENCE ABOUT A ROBBERY AT A KROGER IN MARION COUNTY.**

*Assignment of Error No. IV*

**STACEY MILLER'S CONVICTIONS FOR TAMPERING WITH EVIDENCE WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF MR. MILLER'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.**

*Assignment of Error No. V*

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ENTERED A JUDGMENT OF CONVICTION AGAINST MR. MILLER FOR FIFTH-DEGREE-FELONY**

**POSSESSION OF CRIMINAL TOOLS, IN VIOLATION OF R.C. 2945.75(A)(2), AND IN VIOLATION OF MR. MILLER'S RIGHTS TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.**

*Assignment of Error No. VI*

**A TRIAL COURT COMMITS REVERSIBLE ERROR WHEN IT IMPOSES CONSECUTIVE PRISON TERMS WITHOUT SATISFYING THE STATUTORY MANDATES THAT AUTHORIZE CONSECUTIVE SENTENCES.**

{¶17} Due to the nature of the assignments of error, we elect to address them out of order.

*Assignment of Error No. II*

{¶18} In his second assignment of error, Miller argues that the Court of Common Pleas of Marion County lacked jurisdiction to enter convictions against him for Counts 5, 6, 8-13, and 15 because he was improperly indicted on these charges. Specifically, Miller contends that because the Marion County Grand Jury indicted him for offenses that were committed in different counties other than Marion County, his indictment was defective. We disagree.

{¶19} On appeal, Miller relies on the Fifth District's opinion in *State v. Centers*, 5th Dist. Delaware No. 82-CA-38, 1983 WL 6551 (July 19, 1983), whereas the State's position largely relies upon us adopting the Eighth District's reasoning in *State v. Ahmed*, 8th Dist. Cuyahoga No. 84220, 2005-Ohio-2999. In

-12-

*Centers*, the appellate court held that the trial court should have granted the appellant's motion to dismiss for lack of jurisdiction because he should have been "indicted by the Grand Jury of each county in which an offense was alleged * * *." *Centers* at *2. However, in *Ahmed*, the Eighth District found "no constitutional requirement that limits a grand jury from indicting only on offenses that occurred in the county in which it resides when the additional offenses presented are part of the same course of criminal conduct." *Ahmed* at ¶ 10.

{¶20} While we were hesitant to follow the reasoning in *Ahmed* for several reasons,[7] the Ohio Supreme Court has recently released an opinion, *State v. Jackson*, Slip Opinion No. 2014-Ohio-2707, which addressed arguments that are identical to the arguments Miller makes in his second assignment of error. *Id.* at ¶ 123-132. The Court resolved the issue in the State's favor stating that "[t]here is

---

[7] We believe the court in *Ahmed* put the cart before the horse. Instead of focusing on whether the Grand Jury acted within its statutory powers, the court in *Ahmed* focused on whether the court of common pleas had proper jurisdiction and venue. We recognize that, generally, courts of common pleas are vested with statewide jurisdiction. *State v. Dulaney*, 3d Dist. Paulding No. 11-12-04, 2013-Ohio-3985, ¶ 14; Article IV, Section 4(A), Ohio Constitution; R.C. 2901.11. Further, R.C. 2931.03 gives the court of common pleas original jurisdiction in felony cases. However, felony jurisdiction "is invoked by the return of a proper indictment by the grand jury of that county." *Click v. Eckle*, 174 Ohio St. 88, 89 (1962). The General Assembly, when enacting R.C. 2939.08, decided that the duty of the grand jury would be limited. Pursuant to this statute, a grand jury may only inquire and present offenses which were committed *within its county*. R.C. 2939.08. We found *Ahmed* to be unpersuasive because the court inserted words into R.C. 2939.08 to expand the duty of the grand jury, in contravention to the statute's clear and definite meaning. Specifically *Ahmed* claimed that Ohio's jurisdiction and venue statutes "*impliedly* authorize a grand jury to indict on offenses outside its county provided that such offenses are part of a course of criminal conduct involving the county where the grand jury resides." (Emphasis added.) *Ahmed*, 2005-Ohio-2999, ¶ 11. The court did not give any explanation as to how it came to such an assumption, and unfortunately, neither did the Court in *Jackson*. We further note that in neither case has the Appellant argued the Constitutional requirement that an offender be tried in the county in which the offense occurred. Article I, Section 10, Ohio Constitution ("[A]nd a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *.").

no constitutional or statutory provision that prohibited the Cuyahoga County Grand Jury from indicting Jackson for offenses that occurred in Erie and Lorain Counties as part of a course of criminal conduct that included crimes within Cuyahoga County." *Id.* at ¶ 31. Despite our differing views on the subject, we are bound to follow the Court's ruling. As such, as long as the offenses in Miller's indictments constituted a course of criminal conduct, the Marion County Grand Jury was within its power to indict him on crimes that occurred outside of Marion County.

R.C. 2901.12(H) states:

When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6)  The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

The State argues that Miller's alleged offenses all involved the same modus operandi under R.C. 2901.12(H)(5), and we agree.

{¶21} A modus operandi is a "behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." *State v. Lowe*, 69 Ohio St.3d 527, 531 (1994).  Thus, the modus operandi reveals a "distinct, identifiable scheme, plan, or system" that was used in the commission of the crime.  *State v. Smith*, 49 Ohio St.3d 137, 141 (1990).

{¶22} Here, Miller's alleged conduct revealed a distinct, identifiable scheme that was used throughout the commission of his alleged crimes.  All the conduct happened within a 10-day period and happened in Marion County or in counties adjacent to Marion County.  Further, the same scheme was used in the commission of each crime.  The offender would begin by stealing a different set of license plates before committing each robbery.  The offender would then place the stolen license plates on the same silver colored SUV.  In each robbery, the perpetrator dressed in disguise, and always targeted a woman who was by herself.  Therefore, there is prima facie evidence that the crimes alleged in the indictments were part of a criminal course of conduct.

**{¶23}** Accordingly, we overrule Miller's second assignment of error.

*Assignment of Error No. IV*

**{¶24}** In his fourth assignment of error, Miller argues that the State did not present sufficient evidence to support his convictions for tampering with evidence. We agree.

*Sufficiency Standard*

**{¶25}** When an appellate court reviews the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Wingate*, 9th Dist. Summit No. 26433, 2013-Ohio-2079, ¶ 4.

*Miller's Tampering with Evidence Convictions*

**{¶26}** R.C. 2921.12(A)(1) states that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document or

thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *." Thus, there are three elements of this offense: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 11.

**{¶27}** The State argues that the fact the police were unable to locate the silver handgun and the blond wig used in the Rich Oil robbery or Reed's purse is sufficient evidence that Miller tampered with evidence. However, the "inability of law enforcement to find the gun used in a shooting, by itself, does not show that the defendant 'altered, destroyed, concealed, or removed' it." *State v. Beard*, 6th Dist. Wood No. WD-08-037, 2009-Ohio-4412, ¶ 18, quoting *State v. Wooden*, 86 Ohio App.3d 23, 27 (9th Dist.1993); *see also State v. Hudson*, 2d Dist. Clark No. 2011 CA 100, 2013-Ohio-2351, ¶ 44. In *Beard*, the State "relied on a faulty syllogism: Witnesses saw [defendant] fire a gun. The gun was never found. Therefore, [defendant] must have tampered with the gun to make it unavailable as evidence against him." *Beard* at ¶ 20; *see also State v. Sims*, 2d Dist. Clark No. 2008 CA 92, 2009-Ohio-5875, ¶ 18-29; *State v. Spears*, 178 Ohio App.3d 580, 2008-Ohio-5181, ¶ 23-24 (2d Dist.); *State v. Like*, 2d Dist. Montgomery No.

21991, 2008-Ohio-1873, ¶ 24. Moreover, courts have found that the fact that no fingerprints were found at a crime scene is insufficient to support a tampering with evidence conviction when no evidence is presented that the defendant "wiped the apartment down to remove them." *Beard* at ¶ 18, citing *Like* at ¶ 24.

{¶28} We interpret these cases as standing for the proposition that more than missing evidence is required to prove a tampering with evidence charge. Therefore, the fact that the police were unable to find certain potential evidence against Miller does not prove that Miller tampered with evidence. Even viewing the evidence in the light most favorable to the State, we cannot find any circumstantial or direct evidence in the record that Miller altered, destroyed, concealed, or removed potential evidence with the purpose of impairing its availability in an investigation.

{¶29} Accordingly, we sustain Miller's fourth assignment of error.

*Assignments of Error Nos. I & III*

{¶30} In his first and third assignments of error, Miller argues that his right to self-representation was violated and that the trial court erred in allowing prejudicial evidence at trial of an additional, unindicted theft that occurred in a Marion County Kroger parking lot. We agree.

*Self-representation*

**{¶31}** " 'The Sixth Amendment * * * guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.' " *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 71, quoting *State v. Gibson*, 45 Ohio St.2d 366, 377-378 (1976). After a defendant has properly invoked his or her right to self-representation, the denial is per se reversible error. *Neyland* at ¶ 71, citing *State v. Reed*, 74 Ohio St.3d 534, 535 (1996); *see also McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944 (1984).

**{¶32}** The trial court, even over the objection of the defendant, may appoint standby counsel when the defendant invokes his or her right to self-representation. *Faretta v. California*, 422 U.S. 806, 834, fn. 46, 95 S.Ct. 2525 (1975), citing *United States v. Dougherty*, 473 F.2d 113, 1124-1126 (D.C.Cir.1972). However, the pro se defendant

> is entitled to preserve actual control over the case he chooses to present to the jury. * * * If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right[8] is eroded.

---

[8] Another limitation of standby counsel is that his or her participation, without the defendant's consent, should not destroy the jury's perception that the defendant is representing himself. *McKasle,* 465 U.S. at 178. The excessive participation by standby counsel can destroy the appearance that the defendant is acting pro se and "may erode the dignitary values that the right to self-representation is intended to promote and

(Emphasis sic.) *McKaskle*, 465 U.S. at 178. A standby counsel may assist the defendant in navigating the basic procedures of a trial, even if it "somewhat undermines the pro se defendant's appearance of control over his own defense." *Id.* at 184.

**{¶33}** The pro se defendant can waive his *Faretta* rights as his or her "invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense." *Id.* at 182. "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." (Emphasis sic.) *Id.* at 183.

**{¶34}** Here, Miller invoked his right to self-representation and the trial court granted his request and appointed Attorney Armengau as his standby counsel on February 28, 2013. That same day, Miller filed a "Precipe [sic] for Subpoena" and listed 46 witnesses. Miller was exercising his right to obtain witnesses in his favor by having the clerk issue a Crim.R. 17(A) subpoena for all the witnesses listed on his praecipe. If a subpoena were to be challenged, Miller would have

---

may undercut the defendant's presentation to the jury of his own most effective defense." *Id.* at 181-182. However, since Miller is challenging the conduct of his standby counsel that occurred outside the presence of the jury, we will not focus on this second limitation of standby counsel.

been required to "make a 'plausible showing' of how the witness's testimony [would] be 'both material and favorable to his defense.' " *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, ¶ 123, quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440 (1982).

**{¶35}** Instead of allowing Miller to demonstrate how each of his witnesses would have presented favorable and relevant testimony in his defense, the trial court asked Miller's standby counsel to cross off any witnesses that he deemed unnecessary. This request was done behind Miller's back. On the bottom of the first page of Miller's praecipe, there is a handwritten note by the clerk of courts[9], stating:

> Per Judge F[innegan] ask J. Armengau which really need issued. Spoke with J.Armengau – faxed him list and he said he would review and return to me as to which ones to issue. On 3/7/13, J.A. brought fax to office and said to issue highlighted ones only unless already issued by State. JMK spoke to Judge F[innegan] 3/7/2013 and he said to issue those per J.A[rmengau] to the appropriate county sheriff w/ no fees.

(Docket No. 392, p. 1). Armengau only highlighted 13 witnesses.

**{¶36}** We cannot find where in the record Miller requested Armengau to assist him in issuing subpoenas or choosing witnesses to call in his defense. Indeed, at the February 28, 2013 pretrial hearing, Miller had objected to appointing Armengau as his standby counsel. What disturbs us most about this

---

[9] Although this note was only signed by initials, the initials match Marion County's Clerk of Courts. As such, we will presume she wrote the note.

issue is the fact that the trial court and standby counsel had private conversations concerning Miller's witnesses, and did not include Miller in such discussions. Without Miller's knowledge, the trial court directed Armengau to cross off any unnecessary or irrelevant witnesses. What witnesses were necessary or relevant was a tactical decision that should have been made by Miller, not his standby counsel. Armengau did not seek permission from Miller to alter his praecipe, and Miller had no opportunity to defend his subpoenas by arguing how each witness would provide material and favorable testimony to his defense. We find that this undermined Miller's tactical decisions and limited his control over his own case.

*Prior Bad Acts*

{¶37} "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68 (1975). However, the General Assembly "has codified certain exceptions to the common law regarding admission of evidence of other acts of wrongdoing." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. R.C. 2945.59 contains those exceptions and provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of

mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Similarly, Evid.R. 404(B) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**{¶38}** The Ohio Supreme Court has directed courts to use a three-step test when determining whether evidence of other crimes, wrongs, or acts of the accused is admissible for other purposes. *Williams* at ¶ 19. "The first step is to consider whether the other acts evidence is relevant in making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.* at ¶ 20, citing Evid.R. 401. Second, courts must consider whether evidence of the other crimes, wrongs, or acts is being presented to prove the character of the accused "in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose * * *." *Williams* at ¶ 20. The final step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *Id.*; *see also* Evid.R. 403.

{¶39} R.C. 2945.59 and Evid.R. 404(B) are "to be strictly construed against the state, and * * * conservatively applied by a trial court." *State v. DeMarco*, 31 Ohio St.3d 191, 194 (1987). " 'The admission of such [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 66. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.).

{¶40} Miller argues that the trial court incorrectly permitted several State witnesses to testify about a robbery in a Marion County Kroger parking lot. On October 1, 2011, Jennifer Goers was robbed at gunpoint in Kroger's parking lot. The assailant jumped out of a light-colored SUV and demanded Goers' purse. While Goers was unable to get a good look at her assailant as he was wearing a bandana around his face, she was able to identify him as a white male. Goers was able to recall a partial license plate number from the assailant's vehicle. The license plate number matched Sarah Shonk's license plates, who shortly after the Kroger robbery, discovered that her license plates had been stolen.

{¶41} At trial, the court overruled Miller's objection to the Kroger robbery testimony, only saying "[w]e need the evidence brought in." Trial Tr., Volume III, p. 5. The trial court did not rule with any specificity about why the testimony about the Kroger robbery was relevant or explain why the Kroger testimony was admissible under Evid.R. 404(B). The trial court also failed to consider whether the probative value of the Kroger robbery evidence was outweighed by the danger of unfair prejudice. Additionally, the trial court never made a determination that there was substantial proof that Miller committed the Kroger robbery. While Miller argues that the testimony of the Kroger robbery is inadmissible, the State contends that evidence was permissible to prove Miller's identity by showing his modus operandi, or his unique scheme, plan, or system.

{¶42} Before we can determine whether the evidence related to the Kroger robbery is admissible under Evid.R. 404(B) to establish identity of the perpetrator, it must first be shown that there is substantial proof that Miller is the same person who committed the other act. *State v. Pearson*, 3d Dist. Seneca No. 13-97-49, 1999 WL 378349, *4 (June 4, 1999). "Only after the defendant's identity as the perpetrator of the other act is established can the jury utilize the 'behavioral fingerprint' of the other act to draw a conclusion as to the identity of the perpetrator of the offense charged." *Id.*

{¶43} Goers was not able to identify Miller as her attacker in court. The only description that she provided about her attacker was that he was a white male. Further, Shonk's license plates were not found in Miller's possession. Indeed, they were never recovered. *See* Trial Tr., Volume IV, p. 30, 113-114. This evidence alone is not "substantial proof" that Miller committed the Kroger robbery. The only way the trial court could have found substantial proof that Miller committed the Kroger robbery was to find that he was guilty of the two robberies for which he was on trial – a responsibility reserved for the jury, not the judge.

*Cumulative Error*

{¶44} In both the first and third assignments of error, the State argues that even if the trial court erred, such errors were harmless. For example, the State argues that all of the witnesses Armengau crossed off were irrelevant and could not have provided exculpatory evidence. Thus, Miller was not prejudiced. Moreover, it argues that even if the trial court improperly admitted evidence concerning the Kroger robbery, such error was harmless since there was no unfair prejudice. We recognize that once a defendant invokes his right to self-representation, the denial of such is per se reversible. The court's conduct in essence denied Miller the right to self-representation by refusing to serve subpoenas on most of his witnesses, without his knowledge or consent. Even if

we agreed with the State's conclusory arguments regarding harmless error, we would find that the cumulative nature of such errors necessitates a new trial.

**{¶45}** The doctrine of cumulative error provides that "a judgment may be reversed if the cumulative effect of multiple errors deprives a defendant of his constitutional rights even though, individually, the errors may not rise to the level of prejudicial error or cause for reversal." *In re Guardianship of Clark*, 10th Dist. Franklin No. 09AP-96, 2009-Ohio-3486, ¶ 27, citing *State v. Garner*, 74 Ohio St.3d 49 (1995). Here, there are significant errors made before and during Miller's trial. First, the trial court infringed upon Miller's constitutional right to self-representation, and then it arbitrarily allowed the State to present prejudicial evidence of alleged prior bad acts without offering any explanation or analysis on why the evidence was appropriate. We find that the cumulative error doctrine warrants the reversal of all of Miller's convictions.

**{¶46}** Accordingly, we sustain Miller's first and third assignments of error.

*Assignments of Error Nos. V & VI*

**{¶47}** In Miller's remaining assignments of error, he argues that the trial court erred when it entered a judgment of conviction against Miller in violation of R.C. 2945.75(A)(2), and when it imposed consecutive sentences without making the statutorily required findings. As it relates to Miller's sixth assignment of error, we must note that the State failed to address this assignment of error anywhere in

its Appellee's Brief. The State also filed a Corrected Appellee's Brief, but again, failed to mention Miller's sixth assignment of error. We are unsure if this was intentional or an oversight of the State. However, in light of this court's prior precedent and the Ohio Supreme Court's recent decision in *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, which states that a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry, it seems more likely that the State was conceding that it had no successful arguments as to this assignment of error. Regardless of why the State chose to not address this issue, Miller's fifth and sixth assignments of error are rendered moot by our resolution of his first, second, third, and fourth assignments of error. Accordingly, we decline to address them. App.R. 12(A)(1)(c).

{¶48} Having found no error prejudicial to Miller in the second assignment of error, but having found error prejudicial to Miller in the first, third, and fourth assignments of error, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**